WILKERSON *v.* RANDALL, et al.

No. 43700 November 22, 1965 180 So. 2d 303

*Prewitt, Bullard & Braddock,* Vicksburg, for appellant.

*Dent, Ward, Martin & Terry,* Vicksburg, for appellees, Josh McMurray and United States Fidelity and Guaranty Company.

550

*Dent, Ward, Martin & Terry,* Vicksburg, for appellees, L. A. Randall and Mississippi Loan Corporation of Vicksburg.

RODGERS, J.

This is a damage suit against a justice of the peace, his official bondsmen and the plaintiffs in a lawsuit filed in the justice of the peace court for compensatory and punitive damages occasioned by the alleged wrongful suing out of civil process.

The action originated in the Circuit Court of Warren County, Mississippi, and resulted in a jury verdict against Josh McMurray in the sum of $250, and against his official bondsmen, the United States Fidelity & Guaranty Company, — called U. S. F. & G. Co. — surety on his official bond in the sum of $2,000, in favor of appellant, Charles Wilkerson.

The plaintiffs in the justice court — Mississippi Loan Corporation, and its agent, L. A. Randall — were released by the circuit court upon a motion for a directed verdict. After the verdict was reduced to a judgment, a motion was made by appellant for a new trial, as against all defendants. This motion was overruled. Whereupon, Josh McMurray and his surety, U. S. F. & G. Co., made a motion to arrest and correct the judgment upon the ground that the surety was liable for no more than was due by the principal on the surety bond of the justice of the peace. This motion was sustained by the court and the judgment was changed so as to reduce the surety liability to $250, the amount of the verdict against the justice of the peace, Josh McMurray.

The evidence introduced in the trial reveals that Charles Wilkerson was indebted to the Mississippi Loan Corporation of Vicksburg, Mississippi, and that he was in arrears in a payment due. L. A. Randall, an agent of the Mississippi Loan Corporation, (hereinafter called Loan Company), acting in the scope of his authority, went to the justice of the peace Josh McMurray and attempted to file a suit against appellant, by lodging with the justice of the peace two ledger cards, and by signing a blank open account affidavit form, as agent of the Loan Company. A summons was issued January 3, 1964, returnable in four days, but it was never served. The agent, L. A. Randall, then signed a blank form suggestion of garnishment. Thereafter, on the 11th of January 1964, a writ of garnishment was issued by the justice of the peace and served upon appellant's employer, the Magnolia Mobile Homes Manufacturing Company, on January 14, 1964, wherein it was shown that the judgment had been entered against appellant for $194.64. The Magnolia Homes Manufacturing Company was directed to appear before the justice of the peace court on January 24, 1964. Appellant's employer notified him that he would be discharged within twenty-four

hours unless he cleared up the garnishment. Appellant called upon the justice of the peace, Josh McMurray. The justice of the peace informed appellant that he could not release the garnishment and advised him to see the Loan Company. Appellant went to the Loan Company and notified the manager that he would be fired unless the garnishment was released. On January 15, 1964, appellant was fired by his employer, the Magnolia Mobile Homes Manufacturing Company. On January 22, 1964, appellant again went to the justice of the peace court, with an attorney, and the justice of the peace was shown that no judgment had been obtained against appellant, but the justice of the peace again refused to release the garnishment. The justice of the peace called L. A. Randall who came to the court and finally, after having again called the Loan Company, the justice of the peace released the garnishment, and appellant obtained his wages from his employer. Appellant lost wages in the sum of $183.89 because he was discharged and was unable to work from January 14, 1964, to January 22, 1964, and lost other benefits amounting to the total sum of $407.29. Appellant testified that during the time he was off from work he was financially destitute and had to seek relief from the Salvation Army, and was humiliated and embarrassed, and his reputation was damaged, because of having been fired from a job as the result of a garnishment issued by the justice of the peace.

The appellant complains on appeal that the trial court committed reversible error for the following reasons: (1) the court erred in directing a verdict for L. A. Randall and Mississippi Loan Corporation; (2) the court erred in changing the verdict of the jury and judgment of the court; (3) appellant should have been granted a new trial against all defendants; and (4) the amount of the verdict was so inadequate as to require a new trial.

554

The testimony shows that L. A. Randall was the assistant manager of the Loan Company and as the agent he filed many suits against persons indebted to the Loan Company. He testified that "It was my job to take the checks in. If they don't repay or don't — file suit in the Justice of the Peace Court." The evidence shows the agent L. A. Randall lodged two ledger sheets with the justice of the peace and entered suit on an alleged open account and signed a blank affidavit form to an open account, and later he signed a suggestion of garnishment at a time when he knew no judgment had been taken against appellant. He said "I called Judge McMurray on January 11th, 1964, and asked him if we had obtained judgment on Mr. Wilkerson and he replied, yes, we would have judgment on him on the 13th, which was the following Monday. That's the reason I signed it."

The writ of garnishment was issued on the 11th day of January 1964 and served upon appellant's employer January 14, 1964, although appellant was never summoned to court, and no judgment was taken against him. After the garnishment was served, appellant's employer gave the appellant twenty-four hours to clear up the garnishment of his wages. Appellant went to the justice of the peace who referred him to the Loan Company. He then went to the office of the Loan Company, and upon the trial in the circuit court, the appellant testified as follows: "Did you tell Mr. Thornton at that time that you were going to lose your job unless you could get that garnishment released? A. Yes, sir. Q. What did he tell you? A. He told me that that was my hard luck, that the best I could do was to find another source to pay it off — to try to borrow the money — and he would recommend the loan company."

I

██ The first question then to be decided is whether or not the court erred in directing the verdict for L. A. Randall and the Mississippi Loan Corporation. This

Court has repeatedly reminded the trial courts of the rule that upon a motion for a directed verdict, the evidence must be taken more strongly in favor of the party against whom the judgment is sought, and every material fact shown by substantial evidence should be treated as proved in his favor. Associates Discount Corp. v. McDade, 248 Miss. 270, 158 So. 2d 57 (1963).

The evidence shows that the agent of the Loan Company signed the suggestion of garnishment at a time when he knew the judgment had not been entered against appellant, and knew, or should have known by the use of reasonable care, that such a use or process was void. Nevertheless, after the process had been served and appellant's wages impounded, the manager of the Loan Company was requested to have the garnishment released so that appellant would not lose his job, but he (Mr. Thornton), the manager, refused to release the illegal garnishment unless the indebtedness was paid in full and advised appellant that it was just his "hard luck". The order sustaining the motion to release the Loan Company and its agent is based upon the grounds that the appellant did not prove conspiracy, and that the agent of the Loan Company acted in good faith in filing the suit.

The brief of appellees, Mississippi Loan Corporation of Vicksburg and L. A. Randall, contends that the evidence fails to prove a cause of action against them for malicious use and abuse of process. The declaration states that it "was clearly improper and in gross violation of the Laws of the State of Mississippi and did maliciously use and abuse the legal processes of this Court by having process issued for your Plaintiff on January 3, 1964, returnable to January 7, 1964", and it is contended that the proof does not show a conspiracy or the malicious use or abuse of process of the court. ██ The answer to this proposition is that it is not necessary to allege and prove malice in the procurement

of process, or that the process was maliciously sued out as in malicious prosecution, it is only necessary to prove that the process, after being properly sued out, was maliciously misused or abused. The Virginia Supreme Court in a well-reasoned opinion had this to say on this point: "To sum up this branch of the discussion, if process is wilfully used for a purpose not justified by the law, it is an abuse for which an action will lie. The abuse consists of the unlawful use. While it cannot be wrong to do a lawful act in a lawful way, it is a wrong to do a lawful act in an unlawful way. It is the unlawful method by which the act is done that gives rise to the action, and the intentional use of this method constitutes malice in law. The malice need not be expressly charged; but, if not, there must be an averment of facts from which the law implies the malice." Glidewell v. Murry-Lacy & Co., 124 Va. 563, 98 S. E. 665 (1919), Annot., 4 A. L. R. 225, 229 (1919). █ We may also point out that the intention with which a party did an act may be inferred from the evidence showing his subsequent conduct. Tranchina v. Arcinas, 78 Cal. App. 2d 522, 178 P. 2d 65 (First Dist. Div. Two 1947).

In the instant case, however, the declaration expressly sets out under paragraph six that the defendants, L. A. Randall and the Loan Company — with full knowledge that no judgment had been obtained against the appellant — willfully, wantonly, maliciously and grossly negligent, presented a purported suggestion for writ of garnishment in the court of the defendant Josh McMurray, in violation of Mississippi Code Annotated section 2783 (1956). Thus, it is seen that the declaration charges a cause of action against these appellees for the wrongful suing out of a writ of garnishment under an express statute requiring the officer to issue the writ.

The testimony shows beyond question that the garnishment attaching the wages of appellant was wrongfully sued out. There was no judgment on which to base the

garnishment, Mississippi Code Annotated section 2783 (1956). Ten days had not elapsed after the return of the process upon which a judgment could have been rendered. Miss. Code Anno. § 1825 (1956).

In 38 C. J. S. *Garnishment* section 310 (1943) at page 607, it is said: "A garnishment is wrongful where the grounds on which it is obtained do not in fact exist, even though the person who secured the writ or made the affidavit believed, or had reasonable cause to believe, that the alleged facts were true. It is wrongful, also, where the proceedings on which the property was impounded were void, or the garnisher does not furnish the required bond and affidavit. . . ." In the following section 311, it is pointed out that "Except in the case of an action for malicious prosecution or abuse of process, malice and want of probable cause are not essential elements of an action for damages for wrongful garnishment, although, as appears infra §313, they affect the right to recover exemplary damages." 38 C. J. S. 608, 609. It is then pointed out in section 313 c. that "Exemplary or punitive damages are recoverable where the garnishment was not only wrongful but also malicious or vexatious; but they are not recoverable unless actual damage is shown. The malice which will sustain an award of such damages is actual malice, and not that which is implied in law from a groundless act." 38 C. J. S. 613. This rule is also applicable for the wrongful issuance of other process, such as an attachment and execution when issued upon a void judgment. See 6 Am. Jur. 2d *Attachment and Garnishment* § 615 (1963); 21 Am. Jur. *Executions* § 646 (1939).

The appellee Loan Company and L. A. Randall next argue that the action of the agent Randall was in good faith, and for that reason they should not be held liable for the acts of the agent in filling out a blank suggestion for the issuance of a garnishment, which caused the appellant to lose his job. The issue as to whether or

not a defendant was acting in good faith is a question of fact for the jury to determine. ■■ It is true that malice or willfulness in the abuse of process cannot be inferred from a mere mistake, with the result that good faith is the defense to the action. 1 Am. Jur. 2d *Abuse of Process* § 23 (1962). Nevertheless, good faith is a question for the determination of the jury. Geophysical Service, Inc. v. Thigpen, 233 Miss. 454, 102 So. 2d 423 (1958). ■■ Moreover "good faith" is not an absolute defense to an action for damages resulting from a wrongful garnishment. 38 C. J. S. *Garnishment* § 311 a. (1943). ■■ However, good faith may be shown in defense of a charge of malice. 38 C. J. S. *Garnishment* § 313 c. (1943).

We pointed out in Davis v. Shemper, 210 Miss. 201, 49 So. 2d 253 (1950), suggestion of error 210 Miss. 201, 50 So. 2d 143 (1951), that one who causes a wrongful attachment by garnishment of the bank account of another is liable at least for nominal damages, although no proof of actual damage was shown.

The Court of Appeals of Alabama in a suit for the issuance of a wrongful garnishment, after pointing out the proof necessary to show the elements of a wrongful garnishment quoted from Pounds v. Hamner, 57 Ala. 342, 346, (1876) as follows: "If either of those essential facts be wanting, the garnishment is wrongful, and the defendant is entitled to his action, and to a recovery commensurate with the injury he has actually sustained." (22 Ala. App. 269, 270, 115 So. 74, 76 (Ct. App. 1927). The Court then pointed out that if the garnishment were vexatious, a different rule would apply. (Wells Co. v. Lane, 22 Ala. App. 269, 115 So. 76 (Ct. App. 1927). In that case exemplary damages might be recovered.

The motion in the trial court requesting a directed verdict is based upon the ground that there was no conspiracy between the parties to maliciously and willfully

abuse the process of the justice court. This motion was sustained. On appeal to this Court, the appellees again contended that there was no conspiracy between the parties in this case, and that the defendant Loan Company and its agent L. A. Randall acted without malice. We are of the opinion, however, this contention is not well-taken.

In the case of Jessup v. Reynolds, 208 Miss. 50, 43 So. 2d 753 (1949), the appellee filed a suit for an assault and battery. The declaration charged that the defendants "jointly conceived a violent dislike and hate of plaintiff and conspired and set about to ambush her physically at Gulfport, Mississippi, and in the plan and execution thereof, as the officers and directors of their corporate creature, the defendant corporation, they used the monies, facilities, automobiles and agencies thereof in assembling at said place, and did, in the nighttime, on one of the principal streets of said city, violently attack plaintiff and mercilessly struck and beat her; that these acts were deliberate, wanton, and wilful, and were planned by the group of defendants." On appeal to this Court we held that the injury was caused by the wrongful assault, and said: "Appellant's first contention is that the declaration was based upon an alleged conspiracy, and not upon assault and battery, that the verdict was in favor of all the defendants except appellant, that this necessarily means that the jury found there was no conspiracy, and since it so found, no verdict could be rendered against appellant alone. We do not agree with the contention that the action is founded on conspiracy and not upon assault and battery; the gravamen of the whole complaint is assault and battery and the charge of conspiracy is only incidental thereto; moreover this is a civil action and not a criminal prosecution for conspiracy, and the rule in criminal cases has no application here." 208 Miss. 55, 43 So. 2d 755.

The gravamen of the action in the instant case now before the Court as against the defendant L. A.

Randall and the Loan Company is the injury caused by the issuance of the void garnishment, and not a criminal conspiracy. Moreover, the declaration states a cause of action for the wrongful issuance of a garnishment as against the Loan Company and L. A. Randall. No objection can be raised that the form of the declaration should have been different when it contains a statement of facts constituting a cause of action. Miss. Code Anno. § 1464 (1956).

We hold therefore that the issue as to whether the Loan Company and its agent L. A. Randall wrongfully caused the issuance of a garnishment which was served upon the appellant's employer, resulting in his discharge, was a question for the jury, and should have been submitted to it for its determination.

## II

We do not find it necessary to pass upon the method used by the judge in correcting the verdict of the jury so as to reduce the liability of the surety, U. S. F. & G. Co., to that of the officer, principal on the bond, because we have reached the conclusion that the verdict of the jury fixing the officer's damage at $250 and the damage against the surety at $2,000 obviously indicates prejudice of the jury in favor of Josh McMurray, the justice of the peace. This observation becomes more apparent when we recall that the appellant's actual damage resulting from the mistreatment by the officer and those acting in concert with him amounted to more than the verdict of the jury against the justice of the peace. The verdict in this case is so inadequate as to shock the enlightened conscience of this Court, and requires a new trial as against the Justice of the Peace Josh McMurray and the surety on his official bond, the United States Fidelity & Guaranty Company.

## III

██ ██ We are of the opinion that the issues of malice and punitive damages should have been submitted to the jury against all of the defendants except the surety company. ██ ██ We point out here that where punitive damages are sought against the principal in a bond, the verdict must necessarily show actual damages as distinguished from punitive damages. See Maryland Cas. Co. v. Eaves, 188 Miss. 872, 196 So. 513 (1940).

We said in Fowler Butane Gas Company v. Varner, 244 Miss. 130, 150, 141 So. 2d 226, 233 (1962) that: "The kind of wrongs to which punitive damages are applicable are those which, besides the violation of a right or the actual damages sustained, import insult, fraud or oppression and not merely injuries but injuries inflicted in the spirit of wanton disregard for the rights of others. In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule."

The judgment against Josh McMurray and the United States Fidelity & Guaranty Company as to liability will be affirmed; and the case is hereby remanded for a new trial as against them for damages only. Appellant will also be awarded a new trial as to the liability of L. A. Randall and Mississippi Loan Corporation of Vicksburg, both as to liability and damages.

Affirmed as to the liability of Josh McMurray and the United States Fidelity & Guaranty Company, but reversed as to damages. Judgment of the lower court will be reversed and a new trial granted as to L. A. Randall and the Mississippi Loan Corporation of Vicksburg, both as to damages and liability.

*Lee, C. J., and Jones, Inzer and Smith, JJ.,* concur.