Rebecca LAUGHLIN,
Plaintiff–Appellant,

v.

The PRUDENTIAL INSURANCE CO.,
et al., Defendants–Appellees.

No. 88–4590.

United States Court of Appeals,
Fifth Circuit.

Sept. 5, 1989.

Order on Denial of Rehearing
Oct. 11, 1989.

James H. Mathis Corinth, Miss., for Rebecca Laughlin.

K. Hayes Callicutt, Jackson, Miss., for P. Eddings.

Clifford K. Bailey, III, John E. Hughes, III, Wells, Wells, Marble & Hurst, Jackson, Miss., for Prudential.

Janet Arnold–Wilson, Edward A. Moss, Oxford, Miss., for AIG, Protective Life & Travelers.

S.T. Rayburn, H. Scot Spragins, Oxford, Miss., for Beneficial Standard.

Al Nuzzo, Jayne Buttross, Jackson, Miss., for F. Bennett.

Before RUBIN, POLITZ, and JOHNSON, Circuit Judges.

POLITZ, Circuit Judge:

Rebecca Laughlin brings this interlocutory appeal contending that the district court erred by refusing to remand this action to state court and by granting partial summary judgment dismissing her claims against Pat C. Eddings. Finding no basis for federal jurisdiction we reverse, vacate, and remand.

### Background

We glean the following scenario from the allegations of the pleadings and the record before us. James Laughlin, Sr., a resident of Alcorn County, Mississippi, died as a result of a gunshot wound to his head on May 25, 1985. His wife, Rebecca Laughlin, was the only other person in the room at the time of his death. After an inquest the coroner concluded that Laughlin had died by accidental means. Local law enforcement officials did not believe that an autopsy was necessary and released the body for burial. Shortly thereafter official investigations concluded with findings that the death was accidental.

James Laughlin was the insured under life insurance policies issued by The Prudential Insurance Company of America,

Beneficial Standard Life Insurance Company, AIG Life Insurance Company, Protective Life Insurance, and Travelers Insurance Company. The five policies provided for a total of $250,000 in accidental death benefits. Each named Rebecca Laughlin as the beneficiary. Each policy contained a provision that a beneficiary would not be entitled to benefits if death resulted from suicide or homicide caused by the beneficiary.

Rebecca Laughlin filed claims for the accidental death benefits. The insurers declined to either pay or deny the claims on the basis that they were awaiting an autopsy to be performed by the Mississippi State Medical Examiner's office. Laughlin contacted that office and was informed that it had no plans to exhume her husband's body for autopsy. In January 1986, seven months after her husband's death, Laughlin filed a breach of contract suit against the insurers in federal court in the Northern District of Mississippi. That suit presently pends.

Under Mississippi law insurers are forbidden to require exhumation or autopsy as a condition precedent to the payment of death benefits. *See United States Fidelity & Guaranty Co. v. Hood,* 124 Miss. 548, 87 So. 115 (1921). At the time that the contract suit was filed exhumation and autopsy could only be authorized by family members, Miss.Code Ann. § 41-37-25, or by the court upon petition of the county or district attorney, alleging that the death resulted from criminal means, Miss.Code Ann. § 41-37-9. If objected to, evidence obtained in an autopsy performed pursuant to a court order was not admissible in a civil proceeding. Miss.Code Ann. § 41-37-19.

Shortly after Laughlin filed her federal court suit the insurance companies contacted Dr. Thomas Bennett, the State Medical Examiner, to arrange for the exhumation of James Laughlin's body. The State Medical Examiner did not then have the authority to initiate homicide investigations or to petition the court for authority to perform an autopsy in connection with a criminal investigation. Nevertheless, when the insurance companies requested that he investigate Laughlin's death and offered to pay his expenses, Dr. Bennett agreed to undertake the investigation and to serve as a fee-paid expert on their behalf. When a question arose as to whether Alcorn County would have the funds available to pay the expenses of the autopsy the insurance companies offered to pay any costs assessed to the county.

Bennett first sought to exhume the body for autopsy without the benefit of a court order. His efforts were met with stiff resistance by Rebecca Laughlin and local officials. He was advised by the District Attorney, County Attorney, and the Attorney General's office that he did not have authority to exhume and autopsy Laughlin's body without a court order. Bennett refused an offer by local officials to assist him in obtaining a court order under Miss. Code Ann. § 41-37-9 because the autopsy results would not then be admissible in the contract suit.

In July 1986 the Mississippi Medical Examiners Act of 1974 was repealed and it was replaced by a new Act which broadened the State Medical Examiner's authority to investigate deaths and provided that, in cases of suspected homicide, a disinterment and autopsy could be authorized by the State Medical Examiner without a court order. Miss.Code Ann. § 41-61-67(1). The new Act also provided that any person could petition an appropriate circuit court to order an exhumation and autopsy, Miss. Code Ann. § 41-61-67(2), and that evidence obtained through such autopsies would be admissible in civil cases. Miss.Code Ann. § 41-61-73.

Invoking the new legislation, Dr. Bennett filed a petition seeking authority to exhume the Laughlin remains. After the petition was filed, but prior to the court's ruling, Dr. Bennett left Mississippi to become the Iowa State Medical Examiner. Pat C. Eddings, Dr. Bennett's former administrative assistant who had been instrumental in efforts to secure exhumation, continued to

pursue a ruling from the circuit court.[1] The circuit court denied the petition for exhumation on December 10, 1986.[2]

On May 29, 1987, Rebecca Laughlin filed the instant lawsuit in state court against the five insurance companies, Dr. Bennett, and Eddings for abuse of process arising from the court proceedings seeking the exhumation and autopsy of her husband's body. The defendants removed the case to federal court and Laughlin moved for a remand on the basis that the parties lacked complete diversity because Eddings was a Mississippi citizen. Eddings filed a motion to dismiss and a motion for summary judgment.

The district court denied the motion for remand holding that (1) Eddings had been fraudulently joined, and (2) Laughlin's complaint stated a separate and independent claim for breach of contract against the five diverse insurance defendants which would have been removable if sued upon alone. The district court granted partial summary judgment dismissing the claims against Eddings. Laughlin filed this interlocutory appeal.

### Analysis

■ The threshold issue in this appeal is whether removal was proper. We hold that it was not. Pursuant to 28 U.S.C. § 1441(a):

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

The removing party bears the burden of establishing federal jurisdiction. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir. 1981). Where there are allegations of fraudulent joinder, the removing party has the burden of proving the fraud. *Id.*

Rebecca Laughlin is a Mississippi citizen. Each of the defendant insurance companies is a foreign corporation and Dr. Bennett is a citizen of the state of Iowa. The defendants urge that Laughlin named Eddings as a defendant in order to defeat federal diversity jurisdiction. The burden of persuasion placed upon those who claim fraudulent joinder is a heavy one. The removing party "must show either that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts." *B, Inc.*, at 549 (footnote omitted).[3]

■ In determining whether remand is appropriate this court must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff. *B., Inc.*, 663 F.2d at 549; *Bobby Jones Garden Apartments v. Suleski*, 391 F.2d 172 (5th Cir.1968). In addition, any uncertainties in controlling substantive law must be resolved in favor of the plaintiff. *Id.* Applying these rubrics, the court may find fraudulent joinder only if it concludes that the plaintiff has no possibility of establishing a valid cause of action against the in-state defendant. *Id.; Parks v. New York Times Co.*, 308 F.2d 474 (5th Cir.1962), *cert. denied*, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964).

Laughlin asserts an abuse of process claim against Eddings as a result of the alleged bad faith initiation of a homicide investigation and attempts by the office of the State Medical Examiner to have the body of her husband exhumed and an autopsy performed. Abuse of process is defined in Mississippi jurisprudence as "the intentional use of legal process for an improper purpose incompatible with the lawful function of the process by one with an ulterior motive in doing so, and with resulting damages." *Dunn v. Koehring Co.*,

---

**1.** Eddings attended the hearing as the representative for the State Medical Examiner's office. She was accompanied by four lawyers, all of whom represented the defendant insurers in the pending contract suit.

**2.** There was an exhumation, however. Mrs. Laughlin quietly authorized an exhumation and destructive autopsy while Dr. Bennett was con-

ducting his investigation. In the federal contract litigation, after a dispute concluding in the sanctioning of Mrs. Laughlin and her attorney, the results of that autopsy were disclosed under protective order to the insurance companies.

**3.** There has been no allegation of outright fraud in the plaintiff's pleading of jurisdictional facts.

546 F.2d 1193, 1199 n. 19 (5th Cir.1977). To succeed the plaintiff must prove that: (1) the defendant used judicial proceedings in a way not contemplated by law or for a purpose that the proceedings were not intended by law to effect; (2) the defendant had an ulterior motive or purpose; and (3) damage resulted to the plaintiff from the improper use. *State, Use and Benefit of Foster v. Turner,* 319 So.2d 233 (Miss. 1975); *Wilcon, Inc. v. Travelers Indem. Co.,* 654 F.2d 976 (5th Cir.1981).

█ As an initial matter we reject the assertion of the insurance companies that the establishment of an abuse of process claim is precluded by Laughlin's failure to respond timely to Prudential's requests for admission. Generally, requests for admission which are not denied within 30 days are deemed admitted, *Dukes v. South Carolina Insurance Co.,* 770 F.2d 545 (5th Cir.1985); however, Fed.R.Civ.P. 36(b) grants the court discretion to withdraw or amend the admissions. In this case there is sufficient cause to grant such leave.

█ The insurance companies contend that Eddings cannot be held liable in tort because she was at all times acting as an agent for Dr. Bennett, a disclosed principal. This argument is without merit. An agent receives no shield from the fact that she is an agent or because her principal is also liable for the tort. An agent who uses the legal process in an illegal manner incurs the same liability as she would have incurred had she employed it in her own behalf, 1 Am.Jur.2d, *Abuse of Process,* Section 19, *see Allen v. Ritter,* 235 So.2d 253 (Miss.1970); *State Use of Richardson v. Edgeworth,* 214 So.2d 579 (Miss.1968), and both principal and agent may be held accountable.

█ The insurance companies next argue that Eddings is immune from liability under Miss.Code Ann. § 41–61–65(2) which provides:

Any medical examiner or duly licensed physician performing authorized investigations and/or autopsies as provided in

Sections 41–61–51 through 41–61–79 who, *in good faith,* complies with the provisions of Sections 41–61–51 through 41–61–79 in the determination of the cause and/or manner of death for the purpose of certification of that death, shall not be liable for damages on account thereof, and shall be immune from any civil liability that might otherwise be incurred or imposed. (Emphasis added.)

Abuse of process is an intentional tort and requires a showing of bad faith. *See Wilkerson v. Randall,* 254 Miss. 546, 180 So.2d 303 (1965). Accordingly, section 41–61–65(2), which protects only good faith conduct, provides no immunity against liability for abuse of process. The insurance companies have not met their burden of establishing that Rebecca Laughlin cannot recover against Eddings under the laws of Mississippi. Fraudulent joinder has not been established.

█ The district court also held that removal was appropriate under 28 U.S.C. § 1441(c) which permits removal of a claim joined to a nonremovable claim if it is "separate and independent" from the nonremovable claim.[4] This section must be construed narrowly; it was enacted to reduce the number of cases removable from state to federal court. *McKay v. Boyd Construction Co.,* 769 F.2d 1084 (5th Cir.1985). The Supreme Court has held "where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." *American Fire & Casualty v. Finn,* 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702, 708 (1951); *Moore v. United Service Auto. Ass'n,* 819 F.2d 101 (5th Cir.1987).

█ The question of removability under section 1441(c) is controlled by the allegations of the plaintiff's complaint. *Finn.* The district court found that the complaint states a claim for breach of contract against the five defendant insurance companies that is separate and independent from the abuse of process claim. We dis-

---

4. Section 1441(c) provides:

Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

agree. The pleadings at bar do not state a cause of action for breach of contract. Moreover, Rebecca Laughlin has a breach of contract suit pending in federal court against these same five insurance companies. There is nothing in the record before us to support the contention that in filing this action in state court she was refiling the breach of contract suit already pending in federal court.

We hold that this case was improvidently removed because the district court lacked jurisdiction. Accordingly, we REVERSE, VACATE all actions taken by the district court, including the granting of summary judgment dismissing the claims against Eddings, and REMAND to the district court with instructions to remand this case to the state court.

ON PETITION FOR REHEARING
PER CURIAM:

Defendants–appellees petition for rehearing, suggesting a need for clarification of our opinion, to underscore that the panel made no binding findings of fact or conclusions of Mississippi law on the ultimate resolution on the merits of this dispute. It should be apparent from the posture of the case and the language of the opinion that this court did neither, but acted only on the basis of the plaintiff's allegations which were taken as proven solely for purposes of the appeal. Further, nothing in the legal analysis can be or should be taken as either rulings or expressions on the merits of the underlying dispute.

With this statement, the petition for rehearing is DENIED.