Henry DOZIER, Individually and on Behalf of the Wrongful Death Beneficiaries of ADA M. Dozier and All Who are Entitled to Recover Under the Wrongful Death and Survival Statute and Stephanie Dozier, a Minor, by and Through Her Natural Guardian and Next Friend, Henry Dozier Plaintiffs

v.

HINDS COUNTY, Ford Motor Company, and John Does Defendants

No. CIV.A. 3:04–CV–352BN.

United States District Court, S.D. Mississippi, Jackson Division.

Jan. 10, 2005.

Gerald P. Collier, Stamps & Stamps, Larry Stamps, Stamps & Stamps, Jackson, for Henry Dozier individually, and on behalf of the wrongful death beneficiaries of Ada M. Dozier and all who are entitled to recover under the wrongful death and survival statute and Stephanie Dozier, a minor, be and through her natural, Plaintiff.

George Ellis Abdo, III, Daniel, Coker, Horton & Bell, Joseph Kyle Fulcher, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Barry Wayne Ford, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Mark C. Carroll, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Walker W. Jones, III, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Jackson, for Hinds County, Ms., Ford Motor Company, John Does, Defendants.

## OPINION AND ORDER

BARBOUR, District Judge.

Before the Court are three motions. The first is Motion of Plaintiffs to Remand. The second is the Motion of Defendant Hinds County for Summary Judgment. The third is the Motion of Plaintiffs to

Stay Defendant's Motion for Summary Judgment, pending a ruling on the Motion to Remand. Having considered the Motions, Responses, Supplemental Motion to Remand, Supplemental Response to the Motion to Remand, attachments to each and supporting and opposing authority, the Court finds that the Motion to Remand is not well taken and should be denied. The Court further finds that the remaining two Motions, the Motion of Defendant Hinds County for Summary Judgment and the Motion of Plaintiffs to Stay Defendant's Motion for Summary Judgment, should be denied as moot.

### I. Factual and Procedural History

On September 6, 2002, Plaintiff Henry Dozier was driving northbound on Highway 467 North. Ada Dozier was a passenger in the front seat, and Stephanie Dozier and Brittany Dozier, both minors, were passengers in the back seat of the vehicle. At the intersection of Highway 467 and North Hill Chapel Road, Plaintiff Henry Dozier's vehicle collided with a vehicle driven by Sherry Johnson ("Johnson"). Johnson had been driving west on North Hill Chapel Road. When she approached the intersection of the two roads, she failed to stop at the stop sign placed on North Hill Chapel Road. As a result, she drove into the intersection and collided with Plaintiffs' vehicle. Ada Dozier, Plaintiffs' relative, died in the collision.

Plaintiffs sued both Ford Motor Company ("Ford") and Hinds County, Mississippi ("Hinds County"), in this action. Ford, in its Notice of Removal and its Response to Plaintiffs' Motion to Remand, argues that Hinds County was fraudulently joined in this action for two reasons. First, Defendants argue that Hinds County is not the responsible government entity for the intersection in question. Thus, Hinds County cannot be liable for the placement of stop signs around the intersection. Second, as to the road construction signs

around the intersection, Defendants argue that although these signs were placed there by Hinds County, Hinds County cannot be liable because the placement was a discretionary duty. Hence, Hinds County is entitled to governmental immunity.

Concerning Defendants' first argument, that Hinds County is not responsible for the intersection in question, Hinds County, in its separate Motion for Summary Judgment before the Court, filed the affidavit of Gordon Bain ("Bain"). Bain is currently the Maintenance Coordinator for Hinds County Public Works, and at the time of the accident he was Traffic Control Coordinator for Hinds County Public Works. Affidavit of Bain, attached as Exhibit "D" to the Motion of Hinds County for Summary Judgment, dated July 20, 2004. Bain stated,

> Highway 467 is a two-lane state road for which Hinds County is not responsible. MDOT [Mississippi Department of Transportation] is responsible for Highway 467. North Chapel Hill Road is a two-lane road maintained by Hinds County. However, Hinds County is not responsible for maintenance of the intersection or the portions of North Chapel Hill Road immediately adjacent to Highway 467. The State has a right-of-way for that portion of North Chapel Road and MDOT is responsible for that area.

*Id.* Plaintiffs filed a Motion to Stay the Motion of Hinds County for Summary Judgment on July 30, 2004. Plaintiffs did not address the affidavit of Bain in the Motion to Stay the Motion of Hinds County for Summary Judgment, and they did not address this information in their Motion to Remand.

This Court believed and believes that Bain's affidavit is relevant to the decision of whether or not Hinds County was fraudulently joined. Therefore, on October 20, 2004, this Court issued an Order directing Plaintiffs to respond to the spe-

cific contention of Hinds County that the Mississippi Department of Transportation ("MDOT"), and not Hinds County, was responsible for the intersection in question. Plaintiffs filed their Supplemental Motion to Remand on October 29, 2004, and soon thereafter Hinds County and Ford filed Responses.

## II. Fraudulent Joinder Standard [1]

██ Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." The removing party has the burden of proving that the federal court has jurisdiction to hear the case. *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir.1993), *cert. denied*, 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993). In cases in which the removing party alleges diversity of citizenship jurisdiction on the basis of fraudulent joinder, "it has the burden of proving [ ] fraud" in joinder of the non-diverse defendant. *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 190 (5th Cir.1989). To establish fraudulent joinder, the removing party must prove: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir.2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir.1999)).

When considering whether a non-diverse defendant has been fraudulently joined to defeat diversity of citizenship jurisdiction, courts should "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits and deposition testimony." *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir.1995). However, "the district court is not to apply a summary judgment standard but rather a standard closer to the Rule 12(b)(6) standard." *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir., 2004). Even under this standard, plaintiffs "may not rest upon the mere allegations or denials of [their] pleadings." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir.2000).

██ In *Travis*, the United States Court of Appeals for the Fifth Circuit reiterated the standard by which a plaintiff's claims must be analyzed to determine the fraudulent joinder question. The *Travis* court held:

> [T]he court determines whether that party has *any possibility of recovery* against the party whose joinder is questioned. If there is arguably a *reasonable basis* for predicting that the state law might impose liability on the facts involved, then there is no [improper] joinder. This *possibility, however, must be reasonable*, not merely theoretical.

*Travis*, 326 F.3d at 648 (emphasis in original)(citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d

---

1. In *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 571 n. 1 (5th Cir.2004), the United States Court of Appeals for the Fifth Circuit announced that the legal principle known as "fraudulent joinder" should now and after be referred to as "improper joinder." However, decisions of the Fifth Circuit after *Smallwood*, such as *Gray ex rel. Rudd v. Beverly Enterprises–Mississippi*, 390 F.3d 400 (5th Cir.2004), continue to use the term "fraudulent joinder." This is so despite the fact that Judge

Higginbotham's opinion in *Smallwood* explicitly endorsed the term "improper joinder." While this leaves the Court in a quandary as to which term it should use, in light of the fact that the Fifth Circuit has returned to using the more well-known term of "fraudulent joinder," even though it earlier adopted the term "improper joinder," the Court will also use the term "fraudulent joinder" until instructed otherwise.

305, 312 (5th Cir.2002)). Further, conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that the defendant was not fraudulently joined. *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 392–93 (5th Cir.2000). Therefore, removal is not precluded merely because the state court complaint, on its face, sets forth a state law claim against a non-diverse defendant. *Badon*, 224 F.3d at 390. Removal is proper "if the plaintiff's pleading is pierced and it is shown that as a matter of law there is no reasonable basis for predicting that the plaintiff might establish liability on that claim against the in-state defendant." *Id.*

When conducting a fraudulent joinder analysis, a court must resolve all disputed questions of fact and ambiguities of law in favor of the non-removing party, *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992), but "*only* when there exists an actual controversy, i.e. when *both* parties have submitted *evidence* of contradictory facts." *Badon*, 224 F.3d at 394 (emphasis in original). A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to support his claims against the non-diverse defendant. *Id.* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)). When analyzing these issues, the court must consider the status of discovery in the case. *McKee*, 358 F.3d at 334. In the event the court, after resolving all disputed questions of fact and ambiguities of law in favor of the non-removing party, finds that there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder" and hence no basis for asserting diversity of citizenship jurisdiction. *Jernigan*, 989 F.2d at 816.

## III. Analysis

Two sets of signs are at issue in this case. The first is the regular stop sign directing traffic traveling west on North Hill Chapel Road to stop at its intersection with Highway 467 North. The second was a set of road construction signs on the west, or other, side of the intersection.

As noted above, Defendants make two arguments as to why Hinds County was fraudulently joined in this action. First, Defendants argue that Hinds County is not the responsible for the placement of the stop sign at the intersection in question. Second, as to the placement of the road construction signs, Defendants argue that because Hinds County was performing a discretionary function when it placed the road construction signs, it is entitled to governmental immunity.

As to Defendants' first argument that Hinds County is not responsible for the placement of the stop sign, Defendants argue that MDOT is responsible for the intersection in question, as well as the area immediately surrounding it.[2] In the words of Defendants, "Plaintiffs aver that the placement of the traffic signs west of the intersection somehow made the intersection dangerous. However, Plaintiffs' contention ignores that Hinds County **is not responsible for the intersection of North Chapel Hill Road and Highway 467**, or any allegedly dangerous condition therein." Response of Ford to Plaintiffs' Supplemental Motion to Remand, p. 2, ¶ 3, dated November 5, 2004 (emphasis in original). As such, Defendants argue that if Johnson failed to see the stop sign, that would be the fault of MDOT, and not Hinds County, as the placement of stop signs surrounding the intersection is solely the responsibility of MDOT.

**2.** The uncontested affidavit of Gordon Bain indicates that MDOT is responsible for the intersection and the area immediately surrounding it. Motion of Hinds County for Summary Judgment, attached as Exhibit "D", dated July 20, 2004.

Defendants' second argument is that when Hinds County placed the road construction signs, it was performing a discretionary duty and hence cannot be liable. Plaintiffs counter that Hinds cannot use governmental immunity to shield itself from liability because it violated a duty of ordinary care. Plaintiffs argue that Hinds County violated this duty by negligently placing the road construction signs, which created the appearance the intersection did not even exist (i.e., that, in effect, the road construction signs concealed the intersection). Thus, Plaintiffs argue Hinds County created a danger *within* the intersection by placing particular road construction signs *outside* the intersection, and that Hinds County is responsible for any danger it negligently created within the intersection.

Plaintiffs describe the situation as follows:

> Hinds County created a dangerous condition at the intersection by placing a 'Road Work Next 2.2 Miles' sign on the other side of the intersection. This sign created a dangerous condition at night because it confused motorists as to the location of the intersection and motorists perceived that the intersection was at the location of the 'Road Work Next 2.2 Miles' signs being that they could not see the stop sign. Furthermore, the stop sign's improper placement further magnified this hazardous and unreasonably dangerous condition.

Plaintiffs' Supplement to Motion to Remand, p. 2, ¶ 4, dated October 29, 2004.

Plaintiffs then offer the following statement of Johnson as an evidentiary basis for their theory for the liability of Hinds County. She states,

> I was travelling [sic] toward Raymond on Chapel Hill Road. I intended to stop and then turn left at Highway 467 and go to Raymond High. While I was driving, I saw ahead of me an orange 'Road work next 2.2 miles['] sign—one on the right and one of the left of that road. I mistakenly thought that that was at the intersection and that the stop sign was beyond the orange signs. I drove into the intersection and colided [sic] with another vehicle. I did not see the other vehicle until a split second before the collision.

Statement of Johnson, Exhibit "C" to Plaintiffs' Supplement to Motion to Remand. From this, Plaintiffs argue Hinds County was negligent for the following reasons:

(a) failure to properly position the stop sign at the intersection of North Chapel Hill Road and Highway 467;

(b) failure to make the stop sign at North Chapel Hill Road visible to motorists traveling westbound on North Chapel Hill Road;

(c) failure to warn Plaintiffs and/or motorists of dangers presented approaching the intersection in question;

(d) failure to design and/or maintain the road in a manner so as to prevent and/or negate the occurrence of accidents as the one in the subject case;

(e) failure to exercise ordinary care in the maintenance of the intersection of North Chapel Hill Road and Highway 467;

(f) failure to adhere to and/or follow the Manual on Uniform Traffic Control Devices and/or any other governing procedures, laws, statutes, rules or regulations; and/or [3]

---

3. Plaintiffs argue that failure to adhere to the regulations set forth in the Manual on Uniform Traffic Control Devices is to be considered a factor in determining whether Hinds County exercised ordinary care, and cite *Don-*

(h) [sic] other negligent acts or omissions of the Defendants.

Complaint, p. 4, ¶ 11, attached as Exhibit "1" to Notice of Removal, dated May 13, 2004.

All of Plaintiffs' complaints amount to a claim for negligence, and the claim hinges around two basic premises. First, Hinds County violated a duty of ordinary care when it placed the stop sign at the intersection of Highway 467 and North Hill Chapel Road. Second, Hinds County violated a duty of ordinary care when it placed road construction signs near the intersection. Therefore, Plaintiffs contend, Hinds County is liable under one of the seven specific theories listed directly above.

Concerning the duty of Hinds County with respect the stop sign, as noted above, Hinds County has presented this Court with an affidavit in which Bain states that Hinds County is not responsible for the intersection at issue, or the placement of stop signs around it. Rather, MDOT is. Plaintiffs failed to address this contention, and they have supplied this Court with no evidence suggesting Hinds County was in any way responsible for the intersection or the stop signs surrounding it.

■ It is well-established that the Court should "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits and deposition testimony" in motions to remand. Therefore, where, as here, Defendants submit evidence suggesting Hinds County was not responsible for the intersection or the stop signs, and Plaintiffs offer nothing to contradict that evidence, the Court must accept the Defendants' evidence as true. If Hinds County is not responsible for the intersection or the stop signs, then it cannot be liable for the placement of the stop sign which governed Johnson as she traveled west on North Hill Chapel Road.

*aldson v. Covington County,* 846 So.2d 219

■ Plaintiffs' second premise for the liability of Hinds County is that Hinds County was negligent in two ways when it placed the road construction signs. First, Hinds County violated a duty of ordinary care when placing road construction signs near the intersection, which, in turn, created a dangerous condition by having the effect of concealing the intersection. Second, Hinds County also violated this duty by not warning drivers of the dangerous condition it had created.

Hinds County argues it is entitled to governmental immunity under Miss.Code Ann. § 11–46–9(1)(d) as its decision as to where and how to place the road construction signs was a discretionary duty. Plaintiffs' arguments against Hinds County are outdated, although until recently, these arguments rested on controlling Mississippi law. As recently as *Mississippi Dep't. of Transp. v. Cargile,* 847 So.2d 258, 266–69 (Miss.2003), the Supreme Court of Mississippi continued to rely on its own precedent which stated that § 11–46–9(1)(d) contained a duty of ordinary care. For years the supreme court interpreted § 11–46–9(1)(d) in such a fashion, despite the plain language of the statute which contains no such duty. Section 11–46–9(1)(d) reads:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties *shall not be liable* for any claim:
>
> \*    \*    \*    \*    \*    \*
>
> (d) Based upon the exercise or performance or the failure to exercise or perform *a discretionary function or duty* on the part of a governmental entity or employee thereof, *whether or not the discretion be abused.*

*Id.* (emphasis added). The plain language of the statute indicates that even if a gov-

(Miss.2003) for the proposition.

ernmental entity abuses its discretion when performing a discretionary function or duty, it is immune from liability. Because of the plain language of the statute, reading a duty of ordinary care into the statute came under substantial criticism. *See* Robert F. Walker,[4] Comment, *Mississippi Tort Claims Act: Is Discretionary Immunity Useless?*, 71 Miss. L.J. 695 (Winter 2001). In the words of Mr. Walker,

> ... The supreme court now requires that governmental entities demonstrate the same level of ordinary care when carrying out discretionary functions as required by the MTCA [Mississippi Tort Claims Act] when carrying out statutory duties. This new requirement appears to contradict the express language of the MTCA.
>
>     *     *     *     *     *     *
>
> ... [T]he Mississippi Supreme Court has essentially eliminated the discretionary immunity provision of the MTCA. This immunity is practically worthless since the government must still exercise ordinary care in its performance of discretionary functions. In other words, in order to receive the immunity, the governmental entity must refrain from acting negligently in the first place.

*Id.* at 696 & 706–07 (footnotes omitted).

Recognizing this error, on July 1, 2004, Justice Dickinson of the Supreme Court of Mississippi authored an opinion, *Collins v. Tallahatchie County*, 876 So.2d 284, 289 (Miss.2004), in which the supreme court rejected its earlier precedent and express-

ly stated that § 11–49–9(1)(d) does not impose a duty of ordinary care.

Both parties to this action have centered their arguments on cases such as *Jones v. Mississippi Dep't. of Transp.*, 744 So.2d 256 (Miss.1999). *Jones* stands for the proposition that when placing a traffic control device, such as a road construction sign in this case, § 11–49–9(1)(d) will not shield a governmental entity from liability if the entity violates a duty of ordinary care. *Id.* at 264. A string of other cases dealing with the placement of traffic control devices or similar road safety issues continue to cite *Jones* and its progeny for this proposition. *E.g., Cargile*, 847 So.2d at 269. However, *Collins* expressly rejected the proposition that § 11–49–9(1)(d) contains a duty of ordinary care, although it dealt with a factual context entirely different than the present.[5] *Id.* at 289.

In *Collins* the parties made arguments concerning § 11–49–9(1)(d). Although the supreme court found the provision inapplicable to the facts at hand, the court stated that when the parties brought this provision to the attention of the court, that,

> [i]n doing so, our attention was drawn to an apparent misunderstanding in our case law ... [The court then looked to *Brewer v. Burdette*, 768 So.2d 920, 923 (Miss.2000), which cited the] erroneous proposition that one must use ordinary care in performing a discretionary function to retain immunity. Unfortunately, *Brewer* cited *L.W. v. McComb Separate Municipal School District*, 754 So.2d 1136 (Miss.1999), for the proposition that

4. Partner of Paul, Hastings, Janofsky, & Walker LLP in Los Angeles, California; L.L.B., Yale University; A.B., Harvard University.

5. This is likely the reason that initial legal research does not reveal a connection between *Collins* and *Jones*. In *Collins*, a wife filed a complaint and signed a criminal affida-

vit against her husband for domestic violence. *Id.* at 286. The judge, however, failed to deliver the warrant for the husband's arrest to the sheriff's department. As a result, the husband was not arrested, and the wife's fears became true when her husband shot her twice and then turned the gun on himself and took his own life. *Id.*

an ordinary care standard applies to discretionary function immunity....

\*　　\*　　\*　　\*　　\*　　\*

In *Brewer,* this Court misapplied the wording in *L.W.* by incorrectly applying the ordinary care standard to discretionary duties...Miss. Code Ann. § 11–46–9(1)(d) exempts governmental entities from liability of a discretionary function or duty 'whether or not the discretion be abused'. Therefore, ordinary care standard is not applicable to Miss.Code. Ann. § 11–46(1)(d).

*Id.* at 289(footnote omitted). The case *Collins* discusses, *Brewer,* was decided slightly over one year after *Jones* (the case cited above on which both parties heavily rely). Both *Brewer* and *Jones* cited *L.W.* for the proposition that an ordinary care standard applies to discretionary function immunity. *Brewer,* in fact, cites *Jones* for its interpretation of *L.W.* and the reasons a duty of ordinary care applies to § 11–49–9(1)(d). *Brewer,* 768 So.2d at 922(stating that "[t]his Court has had recent opportunity to consider the discretionary function of governmental entities in more detail" and then citing *L.W.* and *Jones* ). Legal database research indicates that *Brewer* has been overturned on this point of law. However, the proposition in *Jones* appears as if it is still valid law. It is not. The misinterpretation in *Brewer* of *L.W.* and § 11–49–9(1)(d) is no less significant than the misinterpretation in *Jones* of *L.W.* and § 11–49–9(1)(d). Thus, the law as it stands is that *Jones* and its progeny have been overturned to the extent that they hold a duty of ordinary care applies to discretionary government functions. The Court believes this to be the case because *Collins* did not state that its new reading of § 11–49–9(1)(d) applied only to the facts before the supreme court, and the fairest reading of *Collins* is that there is no duty of ordinary care under § 11–49–9(1)(d), regardless of the context in which it applies.

Hinds County cannot be liable for negligence when performing a discretionary duty, which is all that Plaintiffs have alleged here. Thus, there is no genuine issue of material fact on which Hinds County could be held liable and it should be dismissed from this action. The Motion to Remand is not well taken and is denied.

### IV.　Conclusion

IT IS THEREFORE ORDERED that the Motion of Plaintiffs to Remand [7–1] is not well taken and is denied. Defendant Hinds County is hereby dismissed from this action with prejudice as a fraudulently joined defendant.

IT IS FURTHER ORDERED that the outstanding Motion of Hinds County for Summary Judgment [12–1] and Motion of Plaintiffs to Stay the Motion for Summary Judgment [15–1] are rendered moot by this Opinion and Order, and are therefore denied.

SO ORDERED this the 10th day of January, 2005.