**Vernon Isaiah FOGLEMAN, et al.**

v.

**ARAMCO, et al.**

**Civ. A. No. 85–0010–Section O.**

United States District Court,
W.D. Louisiana,
Lafaeytte-Opelousas Division.

Dec. 3, 1985.

Gregg L. Spyridon, Camp, Carmouche, Barsh, Hunter, Gray, Hoffman & Gill, Lafayette, La., for plaintiffs.

Kenneth J. Servay, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for defendants.

## RULING

SHAW, District Judge.

This matter came before the Court on a motion to dismiss for insufficiency of process, insufficiency of service of process, and lack of jurisdiction in personam filed on behalf of defendant Arabian American Oil Company (ARAMCO). For the following reasons this Court has determined that the motion to dismiss should be granted.

Plaintiff was injured on or about January 20, 1984 while employed as an electrician aboard the M/V Al Jubail # 1 and M/V Al Mojil # 8, while these two vessels were doing repairs and renovations on an oil drilling platform located in the Persian Gulf off the coast of Abu Ali, Saudi Arabia. He seeks damages under the Jones Act and unseaworthiness and seeks maintenance and cure. His alleged wife has joined in the suit seeking damages for loss of consortium, services, and society. Plaintiffs

have attempted to effect service of process on ARAMCO by mailing to CT Corporation in Houston, Texas a "Notice and Acknowledgment" form along with the summons and complaint pursuant to Rule 4(c)(2)(C)(ii). This form has not been returned.

ARAMCO is a Delaware corporation whose stock is owned exclusively by Mobil Oil Corporation, Chevron, Inc., Texaco, Inc. and Exxon, Inc. Its principal place of business is Houston, Texas. At all times pertinent hereto, 100% of the stock of Aramco Services Company (ASC) was and is held by ARAMCO. ASC was established by ARAMCO primarily to avoid the tax ramifications of obtaining services and purchasing in the United States. A service agreement exists between ARAMCO and ASC which governs the business relations between them. ASC is obligated to perform many services for ARAMCO, including purchasing goods, selling goods, and recruiting and training personnel, etc. Approximately 90% of the business activity of ASC was and is directly performed for, or on behalf of, ARAMCO. None of the officers of ASC are employed by or have any official capacity with ARAMCO.

■ The first issue to be addressed is whether the service of process utilized by plaintiff to serve ARAMCO was proper. Defendants argue that Federal Rule 4(c)(2)(C)(ii) is not a federal long-arm statute and cannot be used, alone, to perfect service outside of the state. After review of the argument and the cited authorities, this Court concludes that defendant is correct. The rule was drafted to allow service by mail where personal service could otherwise be made under Rule 4(d)(1) [on individuals] or 4(d)(3) [on corporations]. As to corporations, such as ARAMCO, Rule 4(c)(2)(C)(ii) only allows service by mail where service could be made under Rule (4)(d)(3); that is, personally on the corporation's officer or agent within the state. Rule 4(f) sets forth the territorial limits of service under Rule 4(d) and thus also limits Rule 4(c)(2)(C)(ii) service to the territory of the state in which the district court is found or within 100 miles of the place in which the action is brought. Thus Rule 4(c)(2)(C)(ii) can only be used to serve a defendant who is amenable to personal service of process within the state where the Court is located. *San Miguel & Compania, Inc. v. International Harvester Export Co.*, 98 F.R.D. 572, 573 (D.P.R.1983) and *William B. May Co., Inc. v. Hyatt*, 98 F.R.D. 569 (S.D.N.Y.1983).

■ The court in *San Miguel* adopted this reasoning and stated: "Absent a congressional provision for the nationwide service of process when the defendant is a foreign corporation it must have an agent within the territorial limits of the state in which the court sits unless extrastate service can be made pursuant to a state rule." There is no evidence that defendant, ARAMCO, has an agent for service of process in Louisiana; therefore, Rule 4(c)(2)(C)(ii) cannot be used to serve ARAMCO.

■ Another possible means of service upon ARAMCO is via the Louisiana Long-Arm Statute, La.R.S. 13:3201 *et seq.* The Fifth Circuit has held in *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260 (5th Cir.1983) that when a party "borrows" a state long-arm statute to attempt service of process, the party is bound by the state law restrictions that attach to the state long-arm procedure. Therefore, in order to utilize the service of process procedure in La.R.S. 13:3204, the requirements of La.R.S. 13:3201 must be met.

La.R.S. 13:3201 provides in pertinent part:

§ 3201. Personal jurisdiction over nonresidents:

A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:

(1) Transacting any business in this state.

(2) Contracting to supply services or things in this state.

(3) Causing injury or damage by an offense or quasi-offense committed through an act or omission in this state.

(4) Causing injury or damage in this state by an offense or quasi-offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.

■ Sections (1) and (4) could possibly apply to this particular situation. In order to use (1)—transacting business in Louisiana—the dispute must be contractual in nature. *Alba v. Riviere*, 457 So.2d 33 (La. App. 4th Cir.1984); *King v. Carnival Cruise Lines, Inc.*, (W.D.La. Slip Op. No. 82–2791). Subsections (1) and (2) are based on the Supreme Court's decision of *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In that case the Court concluded that although defendant's only contact with the state of California was one insurance policy, that contact, alone was sufficient due to the deliberate nature of the contract. When a nonresident enters into a contract with someone in Louisiana he knows with whom he is dealing and therefore has knowledge that the other party to the contract may hale him into court in Louisiana. Through contract negotiations he can make adjustments to provide for the risk of being sued by the party with whom he is contracting. In contrast, in a tort action the defendant does not have an opportunity to make such adjustments. He does not know where a tort will manifest itself or who the potential plaintiffs will be and therefore cannot foresee being haled into court in Louisiana, absent additional contacts.

That subsections (1) and (2) are not intended to be used in tort actions is also reinforced by other parts of the statute. Subsections (3) and (4) refer to injury or damage, whereas (1) and (2) do not. (1) and (2) require much less conduct by the defendant than (3) and (4). If (1) and (2) could be used for tort actions, there would be no need for subsection (4).

■ This Court notes that even if subsection (1) could be applied to this tort action, the result would not be different. ARAMCO does not do any business in Louisiana. Plaintiffs claim that ASC, the wholly-owned subsidiary of ARAMCO, does business in Louisiana, and therefore the business of ASC can be attributed to the parent corporation, ARAMCO.

The Fifth Circuit stated in *Hargrave v. Fibreboard Corporation*, 710 F.2d 1154 (5th Cir.1983):

> Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent.... It has long been recognized, however, that in some circumstances a close relationship between a parent and its subsidiary may justify a finding that the parent 'does business' in a jurisdiction through local activities of its subsidiaries.

710 F.2d at 1155. They explained this conclusion by reasoning that in some situations the parent exerts such domination and control over its subsidiary that the two do not in reality constitute separate and distinct corporate entities but are one and therefore are considered the same corporation for jurisdictional purposes. The Court went on to discuss the type and degree of control necessary to ascribe to a parent the activities of its subsidiaries. Citing the Supreme Court case of *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), the Court states that: "[S]o long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to another." "100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations." 710 F.2d at 1160. The Fifth Circuit demands proof of control by the parent over the internal business operations and

affairs of the subsidiary in order to fuse the two for jurisdictional purposes. 710 F.2d at 1160; *Walker v. Newgent,* 583 F.2d 163, 167 (5th Cir.1978); *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 493 (5th Cir.1974); *Turner v. Jack Tar Grand Bahama, Ltd.,* 353 F.2d 954, 956 (5th Cir.1965). All the relevant facts and circumstances surrounding the operations of the parent and subsidiary must be examined to determine whether two separate and distinct corporate entities exist.

In the *Hargrave* case, the parent ("T & N") owned 100% of the stock of the subsidiary ("K & M") from 1938 to 1962. During this period T & N maintained its corporate headquarters in Manchester, England, while K & M was headquartered in Ambler, Pennsylvania. The two companies shared no common officers and at no time had more than one common director. T & N and K & M maintained separate bank accounts, accounting and payroll systems, insurance contracts, budget, and financial records; they also filed separate tax returns. No assets of the corporations were commingled.

T & N had complete authority over general policy decisions at K & M, including selection of product lines, hiring and firing of K & M officers, and approval of sizable capital investments. Day-to-day business and operational decisions, however, were made by K & M officers. The court concluded that based upon these facts the plaintiff had not demonstrated that T & N possessed and exercised the nature and degree of control over K & M necessary to fuse the two corporations for purposes of jurisdiction. T & N and K & M "were two separate corporations joined by the common bond of stock ownership."

In the instant case, plaintiff has not shown that ARAMCO controls ASC any more than T & N controlled K & M. Although nearly 90% of the business activity of ASC was and is directly performed for or on behalf of ARAMCO, ASC operated as an independent corporation separate and distinct from ARAMCO.

This Court also notes that even if the business activities of ASC could be attributed to ARAMCO, subsection (1) would not apply to this situation because under recent Fifth Circuit jurisprudence there must be a nexus between the Louisiana business transactions and the incident in dispute. *Farnham v. Bristow Helicopters, Inc.,* 776 F.2d 535 (5th Cir.1985). The evidence does not show any connection between the transactions of ASC and this remote accident in the Persian Gulf.

We now reach the issue of whether the facts of this case could fit under subsection (4) of La.R.S. 13:3201. Upon review of this provision the Court finds that it would not apply to this case. This injury occurred in the Persian Gulf and not *"in this state;"* therefore, the long arm cannot be used and the defendant ARAMCO cannot be served under La.R.S. 13:3204. *Alba, supra; King, supra; Offshore Logistics, Inc. v. The M/V Maersk Transporter,* (E.D.La.1984, Slip Op. No. 84–135).

ARAMCO cannot validly be served by the plaintiff. Without service of process this Court cannot assert personal jurisdiction over ARAMCO. Accordingly, ARAMCO's motion to dismiss is GRANTED.

Counsel for mover shall submit a judgment in conformity with this ruling within ten (10) days.