Kenneth NOLAN

v.

The BOEING COMPANY, et al.

Civ. A. No. 90–221.

United States District Court,
E.D. Louisiana.

April 16, 1990.

Stephen Barnett Murray, Charles Joseph Murray, Murray Law Firm, New Orleans, La., for Kenneth P. Nolan.

Howard J. Daigle, Jr., Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., Keith Gerrard, Richard C. Coyle, Perkins, Coie, Seattle, Wash., for Boeing Co.

Kenneth H. Laborde, Victoria Knight McHenry, Mary E. Garvey, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., Randal R. Craft, Jr., Haight,

Gardner, Poor & Havens, New York City, for General Elec. Co., CFM Intern., Inc., CFM Intern., S.A.

## ORDER AND REASONS

FELDMAN, District Judge.

This case, like the sixteen related cases consolidated with Civil Action No. 89–3657, arises out of the tragic crash of a Boeing model 737–400 aircraft operated by British Midland Airways, Ltd.; the ill-fated flight was enroute from London to Belfast. Kenneth Nolan is the administrator of the estate of Luka Berta Rita Stoker, a victim of the crash.

### I.

■ Under recent amendments to 28 U.S.C. § 1332(c)(2), the legal representative of the estate of a decedent is deemed to be a citizen of the state of the decedent. Because Ms. Stoker was not a citizen of the United States, Mr. Nolan is therefore considered an alien. The exclusive grounds for jurisdiction based on diversity of citizenship are set forth in 28 U.S.C. § 1332(a). The statute provides for suits between a citizen of a state and a citizen of a foreign state, but it does not provide for suits between citizens of foreign states. Accordingly, diversity does not exist if aliens are on both sides of the litigation. *Giannakos v. M/V BRAVO TRADER*, 762 F.2d 1295, 1298 (5 Cir.1985). In this case, Nolan has sued The Boeing Company, General Electric Company, CFM International, Inc., and CFM International, S.A. The presence of CFMI, S.A., a French corporation whose principal place of business is in France, facially destroys diversity and would seem to deprive this Court of jurisdiction. Nevertheless, Boeing has removed this case from state court. It is Boeing's contention that CFMI, S.A. was fraudulently joined because a Louisiana court could not exercise personal jurisdiction over CFMI, S.A. Now before the Court are plaintiff's motion to remand, CFMI, S.A.'s motion to dismiss for lack of personal jurisdiction, and Boeing's motion to dismiss on the ground of forum non conveniens. Also brought into question by the parties' persistent chess match of tactical moves is the order in which the pending motions should be taken up by the Court.

### II.

The doctrine of fraudulent joinder speaks to those situations in which there has been outright fraud in the content of plaintiff's pleading of jurisdictional facts, or in which one can say no possibility exists that the plaintiff would be able to establish a viable cause of action against the alien defendant in state court. *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 190 (5 Cir.1989). Boeing urges that there is no possibility that CFMI, S.A. could be held liable to plaintiff.

■ The fact setting here is somewhat eccentric and confronts the Court with a novel question of analysis. In the typical fraudulent joinder case, a resident plaintiff destroys complete diversity by suing a resident defendant along with nonresident defendants. In such a case, the court must determine whether the law might impose liability on the resident defendant, and the court frequently hears the plaintiff's motion to remand in conjunction with the resident defendant's motion to dismiss. The conceptual inquiry prompted by both such motions ordinarily deals with a kind of substantive guess about the merits of the claim urged against the resident. When a defendant makes a charge of fraudulent joinder, the question, generally framed, is "whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Bobby Jones Garden Apartments v. Suleski*, 391 F.2d 172, 177 (5 Cir.1968). In other words, is there any possibility that the plaintiff might be able to establish liability against the so-called fraudulently joined defendant? *See B. Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5 Cir.1981). If so, the joinder is not condemned as fraudulent. This inquiry quite usually takes the form of a determination of whether the plaintiff has stated a viable

cause of action against the resident defendant.[1]

Because the fraudulently joined defendant is usually a resident of the state in which suit is brought, the question of the court's personal jurisdiction over the resident defendant does not arise. The pivotal inquiry goes directly to subject matter jurisdiction. Not so, here. In this case, because the plaintiff is a foreign citizen, it is the naming of a foreign defendant, and not a resident defendant, that destroys diversity. It is the Court's personal jurisdiction over the alien which becomes the focus of inquiry. Thus, this case differs from the better-known fraudulent joinder cases because Boeing says here that there is no possibility that plaintiff can establish liability against CFMI, S.A.—not because plaintiff is impeded from invoking a serious cause of action against CFMI, S.A.—but, rather, because plaintiff could not establish that CFMI, S.A. is subject to personal jurisdiction in Louisiana. Thus, the usual case focuses directly and only on subject matter jurisdiction in the remand context. Here, however, personal jurisdiction begins to directly implicate the Court's remand authority.

Plaintiff urges the Court to reach its motion to remand first. According to plaintiff, what the Court must determine is whether there is any reasonable basis for predicting that plaintiff could succeed in establishing jurisdiction over CFMI, S.A. under Louisiana law. *See B., Inc.,* 663 F.2d at 550. Plaintiff says that the removing party bears the burden of establishing federal jurisdiction. That is generally true. "Where there are allegations of fraudulent joinder, the removing party has the burden of proving the fraud." *Laughlin,* 882 F.2d at 190. The burden on Boeing to show fraud is "a heavy one." *Id.* In determining whether remand is appropriate, this Court must evaluate all factual allegations in the light most favorable to the plaintiff,

and resolve all uncertainties in controlling substantive law in favor of the plaintiff. *Bobby Jones Garden Apartments v. Suleski,* 391 F.2d 172 (5 Cir.1968). Although plaintiff bears the ultimate burden of proving that CFMI, S.A. is subject to personal jurisdiction in Louisiana, plaintiff suggests that it is Boeing, as the removing party, who bears the burden of proving that there is no possibility that plaintiff could recover from CFMI, S.A. If there is any possibility that plaintiff could establish personal jurisdiction over CFMI, S.A. in state court, this case is not cognizable in federal court. Thus, the argument tracks traditional fraudulent joinder doctrine.

■ Plaintiff's argument is compelling. Were the Court to address his motion first, the Court's inquiry would be as plaintiff wishes. However, when presented with both a motion to remand and a motion to dismiss for lack of personal jurisdiction, it is within the Court's discretion as to which motion it will decide first. *Walker v. Savell,* 335 F.2d 536 (5 Cir.1964). *See also Schwegmann Bros. Giant Supermarkets, Inc. v. Pharmacy Reports, Inc.,* 486 F.Supp. 606 (E.D.La.1980). These cases seem to pay a heavy respect to judicial economy. In *Walker,* the court held that the district court had a right to decide questions of personal jurisdiction before it took any action on the plaintiff's motion to remand. 335 F.2d at 538. The court invoked economy considerations to support the decision because:

> it was proper for the trial court to examine into this question immediately and not subject the defendant, so protesting, to a further hearing on the motion to remand and possibly to a further hearing in a state court where it would then have to raise once again the question of personal jurisdiction. Once appellee lodged in the district court its challenge to the jurisdiction in personam, it was entirely

---

1. For example, in *Laughlin,* the court found that the plaintiff had asserted a valid abuse of process claim. In *Robinson v. National Cash Register Co.,* 808 F.2d 1119 (5 Cir.1987), the court found that there was no contractual duty running from the diversity-destroying defendant to

the plaintiff, and that the plaintiff could not recover from that defendant. And in *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545 (5 Cir.1981), the court found that the plaintiff had stated a valid tortious interference with contractual rights claim.

appropriate for that court to inquire into, and resolve, that issue.

335 F.2d at 539.

CFMI, S.A. would no doubt raise the question of personal jurisdiction in state court should the Court not reach it here, and remand instead. Because the parties have conducted discovery on and fully briefed the question of personal jurisdiction, which this Court is well equipped to decide, the Court finds it more convenient to deal here and first with the motion to dismiss.[2]

In *Allen v. Ferguson*, 791 F.2d 611 (7 Cir.1986), the Seventh Circuit also discussed the question of whether the district court has the discretion to determine whether a motion to remand discretion to determine whether a motion to remand or a motion to dismiss for lack of personal jurisdiction should be taken up first. The *Allen* court declined to express an opinion on the soundness of reading *Walker* as authorizing the district court to decide the more convenient motion; the Seventh Circuit limited the application of *Walker* to only those cases in which personal jurisdiction cannot be obtained. 791 F.2d at 615. Though this Court is sympathetic to the notions of judicial restraint expressed in *Allen* and hesitates to reach out to decide controversial questions, it finds that even under the more restrained approach of *Allen* it is appropriate in this case to reach the motion to dismiss first. This is a case in which it is alleged that personal jurisdiction cannot be obtained; unlike *Allen*, this is not a case in which a defective service of process could have been cured under 28 U.S.C. § 1448.

### III.

■ A federal court may exercise personal jurisdiction over the defendants only to the extent which the state long-arm statute permits. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346 (5 Cir.1984). In 1987,

the Louisiana legislature amended the state long-arm statute to insure that the jurisdiction of a Louisiana court extends to the limits allowed by due process. "Now, under the express terms of the present long-arm statute, the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements." *Superior Supply v. Assoc. Pipe & Supply*, 515 So.2d 790 (La.1987). The Due Process Clause mandates a two pronged test for determining whether a court may exercise personal jurisdiction: "(1) the non-resident must have minimal contacts with the forum, and (2) subjecting the nonresident to jurisdiction must be consistent with traditional notions of fair play." *Pedelahore*, 745 F.2d at 348 (citing *Product Promotions v. Cousteau*, 495 F.2d 483 (5 Cir.1974)).

■ Depending on the extent of a defendant's contacts with the forum, the court may exercise specific jurisdiction (jurisdiction over the defendant for claims arising out of the defendant's contact with the forum) or general jurisdiction (jurisdiction over the defendant for all claims because the contacts were more continuous and systematic). *See Interfirst Bank Clifton v. Fernandez*, 844 F.2d 279 (5 Cir.1988). In this case, the plane crash that created plaintiff's claims occurred in Great Britain; thus, in terms of specific jurisdiction, the claim is unrelated to this forum. Nor can this Court exercise specific jurisdiction through the stream-of-commerce doctrine as in *Petroleum Helicopters, Inc. v. Avco Corp.*, 804 F.2d 1367 (5 Cir.1986), because none of the controversial CFM56 series engines found in this forum were sold by CFMI, S.A. Consequently, this Court can bind the defendant to a judgment only if it may exercise general personal jurisdiction over the defendant. When, as here, the claim does not focus on fault-giving conduct that happened within the forum, due process requires that there be "continuous and systematic contacts" between the State

---

**2.** It is also significant that defendants may lose their opportunity to remove this action if CFMI, S.A.'s motion to dismiss is heard by the state court. The Fifth Circuit uses the "voluntary-involuntary" rule, which bars removal after a dismissal of a nondiverse defendant unless the dismissal was voluntarily made by the plaintiff. *See Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 546 (5 Cir.1967).

and the nonresident party to support an exercise of general jurisdiction by that forum. *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5 Cir.1987) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). The question, therefore, is whether the foreign defendant had continuous activity within Louisiana so as to make it amenable to suits that are unrelated to that activity.

CFMI, S.A. is a French corporation; its principal place of business is in Paris. CFMI, S.A. is owned equally by GE and Soceite Nationale d'Etude et de Construction de Moteurs d'Aviation. GE and SNECMA jointly developed the CFM56 series engine thought to be partly the cause for the crash, and then formed CFMI, S.A. to hold the engine's type certificate and to market the engine. An engine type certificate is a certificate issued by a government agency to reflect the agency's determination that the design of the engine meets applicable regulatory standards and may be manufactured to that design. As the type certificate holder, CFMI, S.A. licenses the production of CFM56 series engines back to GE and SNECMA. GE and SNECMA actually produce the engine parts and assemble the engines. GE and SNECMA then sell the parts and engines back to either CFMI, S.A. or to CFMI, Inc., who act as the marketing points. CFMI, S.A. markets the parts and engines in Europe, Africa and the Near East. CFMI, Inc., which is also owned by GE and SNECMA, markets the engines in North, Central and South America, and in the Far East. CFMI, S.A. provides support services for engines that it sells and also for the engines sold by CFMI, Inc. and later placed in service in Europe, Africa or Asia.

As the type certificate holder, CFMI, S.A. controls design quality for all CFM56 series engines and licenses the production of all such engines by GE and SNECMA.[3] It is responsible to the Federal Aviation Administration for the performance of the engines. CFMI, S.A. receives any airworthiness directives issued by the FAA with regard to CFM56 series engines and is supposed to coordinate the issuance of any necessary service bulletins to all engine users.

CFMI, S.A.'s responsibilities about the CFM56 series engine may be great, but the firm's direct contact with Louisiana is nonexistent. CFMI, S.A. does not market any engines in Louisiana. It does not maintain any offices in Louisiana. It does not deliver any product in Louisiana. It has no airline customers that are located in Louisiana; it doesn't even have airline customers that regularly fly to or from airports in Louisiana. In short, CFMI, S.A. is not present in this forum. It simply is not here; not at all.

Undaunted, plaintiff argues that CFMI, S.A. does nevertheless have continuous and systematic contacts with the forum that would support the assertion of personal jurisdiction over CFMI, S.A. by a court of this state. Plaintiff serves up two theories for why a Louisiana court would find a constitutional basis for asserting personal jurisdiction over CFMI, S.A.: (1) CFMI's own activities and responsibilities subject it to personal jurisdiction in Louisiana; and (2) the activities in Louisiana of CFMI, S.A.'s co-venturers, GE, SNECMA and CFMI, Inc., subject CFMI, S.A. to jurisdiction here.

### A.

First, the Court must consider CFMI, S.A.'s contacts with the forum. "[U]nless the defendant has some cognizable contacts with the proposed forum, the court cannot assert general jurisdiction." *Donatelli v. National Hockey League*, 893 F.2d 459, 465 (1 Cir.1990). Plaintiff makes much of CFMI, S.A.'s responsibility as the engine type certificate holder, but a responsibility, no matter how extensive, is not a contact. The requisite inquiry into a defendant's

---

**3.** There is some dispute among the parties as to CFMI, S.A.'s responsibilities as the type certificate holder. When the evidence presented conflicts, the court will construe all reasonable inferences in favor of the plaintiff for purposes of this motion. *See Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11 Cir.1988).

contacts with the forum is motivated by the notion that the defendant have some sort of presence in the forum, either by doing business in forum, by directing a product toward the forum, or other conduct that indicates that the defendant purposefully availed himself of the forum's benefits and privileges so that he should reasonably anticipate being called into the forum. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Presence, then, is not as metaphysical as plaintiff would hope.

Plaintiff states that many planes with CFM56 series engines fly into Louisiana. The fact that a defendant's product is fortuitously found in the forum has never been a sufficient basis for exercising personal jurisdiction. That CFM56 series engines are used on planes that fly in Louisiana in no way indicates that CFMI, S.A. purposefully availed itself of the forum. Similarly, the fact that parts and service manuals prepared under the supervision of CFMI, S.A. are regularly used in Louisiana is of little guidance. The ultimate consumer's decision on where to use the product cannot form the basis for asserting personal jurisdiction over the manufacturer, seller, or licensor.

The only cognizable contact that plaintiff can point to is the asserted sending to Louisiana of service bulletins prepared under the supervision of CFMI, S.A. Plaintiff, however, offers no proof that CFMI, S.A. sends service bulletins to Louisiana; he only assumes that service bulletins are sent here. Accordingly, plaintiff fails to carry its burden of proving that CFMI, S.A. has continuous and systematic contacts with the forum.[4]

### B.

May the activities of G.E. and CFMI, Inc. be attributed to CFMI, S.A.? Plaintiff ar-

gues that to the extent G.E. or CFMI, Inc. perform CFMI, S.A.'s duties they are acting as its agents and their contacts can be attributed to CFMI, S.A. Plaintiff adds that G.E., CFMI, Inc. and CFMI, S.A. are joint venturers, and, as such, the contacts of each are attributable to the other.

### 1.

██ Despite the fact that corporate entities are viewed distinctly, courts do inquire into the nature of their interrelationship when jurisdiction is at issue. *Donatelli v. National Hockey League,* 893 F.2d 459, 465 (1 Cir.1990). For example, if a parent corporation uses a subsidiary in such a way that an agency relationship between the two corporations exists, the contacts of the subsidiary may be attributed to the parent. *Id.* at 466. Similarly, if the parent corporation exercises a degree of control greater than that normally associated with common ownership and direction, or if the subsidiary is merely a shell, the subsidiary is considered to be the alter ego of the parent corporation. *Id.*

In the Fifth Circuit, it is equally well-settled that if a wholly owned subsidiary is operated as a distinct corporation, its contacts with the forum ought not be imputed to the parent. *Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 773 (5 Cir. 1988). As long as a parent and a subsidiary maintain separate and distinct corporate identities, the presence of one in a forum state may not be attributed to the other. The cases demand proof of control or dominance by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes. *Id.* at 774 n. 18.[5] In *Southmark,* the plaintiff stressed that although the subsidiary was not its par-

---

**4.** Even if the Court were to take plaintiff's allegations as true, the sending of service bulletins is not a sufficient basis for general jurisdiction under the cases discussed. Accordingly, there is no possibility that a state court would exercise personal jurisdiction over CFMI, S.A. based on the facts alleged by plaintiff.

**5.** In *Southmark,* the district court found that the subsidiary kept separate books and bank accounts from its parent, filed a separate tax re-

turn, was managed by a separate board of directors, and was not managed by officers of the parent. Based on this and the fact that the plaintiff had not shown any instances where the parent interfered with or directed the day-to-day business of the subsidiary, the court concluded that jurisdiction over the subsidiary could not be imputed to the parent. *See also Fogleman v. Aramco,* 623 F.Supp. 908 (W.D.La.1985).

ent's alter ego, it was its agent in the forum. The court refused to distinguish between constructive agents and alter egos, but did imply that a finding of actual agency would support imputing jurisdiction to the principal. *Id.* That reasoning is consistent with *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 492 (5 Cir.1974), in which the Fifth Circuit explicitly recognized that an agency relationship may be a function of jurisdiction over the principal.

In this case, plaintiff does not claim that G.E. or CFMI, Inc. are alter egos of CFMI, S.A.; indeed, there is no evidence that CFMI, S.A. asserted any control whatsoever over the activities of G.E. or CFMI, Inc. Rather, plaintiff contends that G.E. and CFMI, Inc. acted as agents of CFMI, S.A. If the acts of the alleged agent formed the basis of the plaintiff's complaint, he would need to show only a special agency for the purpose of the complained of acts. *Wells Fargo & Co. v. Wells Fargo Exp. Co.,* 556 F.2d 406, 422 (9 Cir.1977). However, where the plaintiff seeks to bring the defendant under the Court's general jurisdiction, plaintiff must establish a general agency. *Id.* General agency exists when the putative agent carries on substantial activities for the benefit of the principal. In other words, in the context of this case, a general agent is one who performs duties which are sufficiently necessary to the corporation's operations. The services performed by the agent must be so important to the corporate principal that if it did not have the stand-in to perform them, the corporation's own people would do it themselves. Such an agent must have broad executive responsibilities, and the relationship must reflect a degree of continuity.[6] *Wells Fargo,* 556 F.2d at 423 (citations omitted).

Under Louisiana law, an agency relationship is created by either the express appointment of a mandatary under Civil Code Article 2985, or by some implied appointment which traces to apparent authority.

*Richard A. Cheramie Enterprises v. Mt. Airy Refining,* 708 F.2d 156, 158 (5 Cir. 1983) (citations omitted). An agency relationship cannot be presumed; it must be clearly established. *Id.* Plaintiff does not contend that CFMI, S.A. fits within the express authority doctrine of Article 2985. Plaintiff must therefore rely on the existence of some implied agency. To establish implied agency, plaintiff must show that (1) CFMI, S.A., as principal, made some overture or inference to a third party and (2) the third party reasonably relied on the putative agent's purported authority as a direct consequence of CFMI, S.A.'s representations. *Id.* Furthermore, agency may not be implied by the conduct of the purported agent. *Id.* (citation omitted). Plaintiff has not met his burden.

Plaintiff has offered no evidence of record tending to show that CFMI, S.A. made any overtures or inferences to anyone or that anyone relied on any such conduct. His failure to offer up prima facie evidence that CFMI, Inc. or G.E. were cloaked with an agent's authority to act on behalf of CFMI, S.A. is fatal to plaintiff's argument. *See Product Promotions Inc.,* 495 F.2d at 494. For support plaintiff points only to the organizational structure of CFMI, S.A. The deposition testimony of Georges Sangis, the representative of CFMI, S.A., establishes that the operational activity of CFMI, S.A. is carried out through employees of SNECMA, that the main office of CFMI, S.A. is at the headquarters of SNECMA in Paris, and that CFMI, S.A.'s program control board, which oversees the coordination of engine design, is composed of SNECMA and G.E. personnel. None of these facts, however, suggest that either G.E. or CFMI, Inc. acted as an agent of CFMI, S.A. None infers the kind of blend of identities needed to impute jurisdiction.

Furthermore, there is virtually no evidence that the alleged agents carried on

---

**6.** The alleged agent need not be a subsidiary of the parent in order for the Court to anchor its jurisdiction on the agency relationship; whether the alleged general agent is a subsidiary of the principal, or independently owned, is irrelevant.

*Wells Fargo,* 556 F.2d at 423. It may even be that the parent is the agent of the subsidiary. *See Orefice v. Laurelview Convalescent Center, Inc.,* 66 F.R.D. 136, 141 (E.D.Pa.1975).

substantial activities for the benefit of CFMI, S.A. Plaintiff points to an isolated incident in 1988 when a Taca International Airlines aircraft equipped with a CFM56 series engine made a forced landing in New Orleans. A replacement engine was sent to Louisiana along with an individual, apparently employed by G.E., who provided technical assistance. Both the engine and the representative were sent by CFMI, Inc. This one incident, even if the actions of CFMI, Inc. could be said to have been taken on behalf of CFMI, S.A., does not establish a general agency that would bring CFMI, S.A. under this Court's jurisdiction.

### 2.

Plaintiff also argues that G.E., CFMI, Inc., and CFMI, S.A. were involved in a joint venture and that, accordingly, the contacts of G.E. and CFMI, Inc. with this forum can be attributed to CFMI, S.A. Ordinarily, whenever one co-venturer acts in the forum to further the interests of the venture, its contacts with the forum will be attributed to the co-venturers. *See Itel Containers Intern. v. Atlanttrafik Exp. Serv.,* 116 F.R.D. 477 (S.D.N.Y.1987); *Aigner v. Bell Helicopters, Inc.,* 86 F.R.D. 532, 540 (N.D.Ill.1980). Thus, when the activities of one co-venturer in the forum are sufficient to sustain the exercise of personal jurisdiction, jurisdiction will attach as to all of the participants in the venture. *Aigner,* 86 F.R.D. 532.

In Louisiana, joint ventures are likened to partnerships and are generally governed by the law of partnership. *Huffman Technical Drilling, Inc. v. Smith,* 424 So.2d 435 (La.App. 5 Cir.1982). As a result, four factors drive a determination about whether a joint venture exists: "(1) whether the parties intended to form a ... joint venture; (2) whether the parties share a common interest in the subject matter of the venture; (3) whether the parties share profits and losses from the venture; and (4) whether the parties have joint control or the joint right of control over the venture."

*Davidson v. Enstar Corp.,* 848 F.2d 574, 577 (5 Cir.1988). A joint venture cannot exist where the business or enterprise is organized and operated in corporate form. *Westenberger v. State, Dept. of Education,* 333 So.2d 264, 270 (La.App. 1 Cir. 1976). The alleged co-venturers in this case are not shareholders in a common corporation as in *Westenberger,* but they are organized in corporate form: G.E. owns nearly 50 percent of the stock of both CFMI, Inc. and CFMI, S.A. More to the point, there is no evidence that CFMI, S.A. shared the profits and losses of the venture or exercised any control over the venture or acted in any way as a partner of G.E. and CFMI, Inc. It follows, then, that the Court is presented with no evidence of a joint venture between CFMI, S.A., CFMI, Inc. and G.E.[7]

### C.

On a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, plaintiff bears the burden of establishing a prima facie case of jurisdiction over the nonresident defendant. *Morris v. SSE, Inc.,* 843 F.2d 489 (11 Cir. 1988). Because plaintiff has failed to make a prima facie showing that CFMI, S.A. had continuous and systematic contacts with the forum or that the contacts of G.E. or CFMI, Inc. could be attributed to CFMI, S.A. as its agents or co-venturers, the Court finds that it cannot exercise personal jurisdiction over CFMI, S.A. in accordance with due process.

### IV.

For the foregoing reasons, CFMI, S.A.'s Motion to Dismiss is GRANTED. The Court's resolution of CFMI, S.A.'s motion to dismiss is equally dispositive of plaintiff's motion to remand since, with the dismissal of CFMI, S.A., this Court has diversity jurisdiction over the subject matter of this suit. Accordingly, plaintiff's Motion to Remand is DENIED. This leaves Boeing's

---

**7.** Plaintiff makes much of the relationship between G.E. and SNECMA. This reliance is misplaced. Although G.E. and SNECMA have engaged in a classic form of joint venture by forming a third corporation owned in equal parts by each, the jointly-owned subsidiary corporation is not itself a co-venturer; it is a product of that venture.

motion to dismiss on the ground of forum non conveniens. The reasons that led the Court to dismiss the earlier cases arising out of the British Midlands crash obtain here as well. Consequently, for the reasons set forth in the Court's order in Civil Action 89–3657, Boeing's Motion to Dismiss for forum non conveniens is GRANTED. The conditions imposed on the forum non conveniens dismissal in Civil Action 89–3657 shall apply here as well.