Cedric WELLS, Perry Lee McDonald, Darlisa McDonald, and Jason Vircher Plaintiff

v.

SHELTER GENERAL INSURANCE COMPANY, Shelter Mutual Insurance Company, and Kerry Howell Defendant

Civil Action No. 301CV999BN.

United States District Court, S.D. Mississippi, Jackson Division.

Aug. 2, 2002.

J. Brad Pigott, James Douglas Minor, Jr., Pigott, Reeves, Johnson & Minor, P.A., Jackson, MS, for Cedric Wells, Perry Lee

McDonald, Darlisa McDonald, Jason Vircher.

Michael N. Watts, Robert B. Best, Holcomb Dunbar, P.A., Oxford, MS, for Shelter General Ins. Co.

Charles Greg Copeland, Janet G. Arnold, Copeland, Cook, Taylor & Bush, Ridgeland, MS, for Mississippi State Rating Bureau.

Teselyn Afrique Melton, Robert L. Gibbs, Brunini, Grantham, Grower & Hewes, Jackson, MS, for Kerry Howell.

## OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on the Motion of Plaintiffs to Remand. Having considered the Motion, Response, Rebuttal, Surrebuttal, attachments to each, and supporting and opposing authority, the Court finds that the Motion is not well taken and should be denied.

### I. Background and Procedural History

Plaintiffs filed the instant lawsuit in the Circuit Court of the First Judicial District of Hinds County, Mississippi, on November 19, 2001. Plaintiffs alleged that, based on their credit scores, which Shelter obtained from Choicepoint, Inc., a nonparty to this action, Defendants Shelter General Insurance Company or Shelter Mutual Insurance Company (collectively "Shelter" or "Insurance Defendants") either denied their applications for automobile and/or homeowners insurance, approved their applications at higher rates, or canceled their existing insurance coverage. Plaintiffs further alleged that (1) the use by Shelter of their credit scores in making coverage-related decisions was discriminatory pursuant to sections 83–2–3 [1] and 83–5–35 [2] of the Mississippi Code, and (2) the use of their credit scores in determining their insurability was concealed by agents of Shelter at the direction of Defendant Kerry Howell ("Howell"), a managerial employee of Shelter. Based on the alleged denials or cancellations of insurance coverage by Shelter, and the conduct of Defendants in connection thereto, Plaintiffs asserted causes of action against Shelter and Howell for conspiracy, breach of implied covenant of good faith and fair dealing, and negligent misrepresentation.[3]

On December 28, 2001, the Insurance Defendants removed the lawsuit to this

---

**1.** Providing that

Rates shall not be excess, inadequate or unfairly discriminatory....Unfair discrimination exists if, after allowing for practical limitations, price differentials fail to reflect equitably the differences in expected losses and expenses. A rate is not unfairly discriminatory because different premiums result for policyholders with like loss exposures with different expenses, or like expenses but different loss exposures, so long as the rate reflects the differences with reasonable accuracy.

MISS. CODE ANN. § 83–2–3(1)(d).

**2.** Providing that "[n]o person shall engage in this state in any trade practice which is defined ... or determined ... to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." Section 83–5–35 provides:

The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance....(g) Unfair Discrimination....(2) Making or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees, or rates charged for any policy or contract of accident or health insurance or in the benefits payable thereunder, or in any of the terms or conditions of such contract, or in any other manner whatever.

MISS CODE ANN. § 83–5–35(g)(2).

**3.** Plaintiffs also asserted causes of action against the Mississippi State Rating Bureau, which they voluntarily dismissed with prejudice on April 18, 2002.

Court pursuant to 28 U.S.C. § 1441 on the basis of federal question jurisdiction under 28 U.S.C. § 1331 and diversity of citizenship jurisdiction under 28 U.S.C. § 1332. For the purpose of diversity analysis, Plaintiffs are citizens of Mississippi. Defendants Shelter General Insurance Company and Shelter Mutual Insurance Company are corporations organized under the laws of Missouri with their principal places of business in Missouri. Defendant Howell is a citizen of Mississippi. Defendants contend that Plaintiffs have fraudulently joined Howell to avoid federal jurisdiction and that the Court may therefore properly assert federal subject matter jurisdiction over this case.[4] Defendants also contend that the Court may properly assert federal subject matter jurisdiction over this case on ground that Plaintiffs' state law claims are completely preempted by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Plaintiffs filed the instant Motion to Remand on January 25, 2002.

## II. Analysis

### A. Does Federal Question Jurisdiction Exist?

In their Complaint, Plaintiffs' asserted only state law claims. Defendants contend, however, that even though no federal claim appears on the face of the Complaint, this Court has subject matter jurisdiction because the Plaintiffs' claims are either governed, or completely preempted, by federal law. Pursuant to 28 U.S.C. § 1447(c), a case that has been removed from state court under 28 U.S.C. § 1441(a) must be remanded if the district court finds that it lacks subject matter jurisdiction. Generally, to determine whether a federal question exists for removal purposes, a court examines the allegations of the plaintiff's well pleaded complaint. *See Carpenter v. Wichita Falls Independent School District*, 44 F.3d 362, 366 (5th Cir. 1995). Under the well pleaded complaint rule, a federal question must appear on the face of a plaintiff's state court complaint before a federal district court may exercise removal jurisdiction. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

In the case *sub judice*, examination of the subject state court Complaint does not reveal any federal question upon which this Court can exercise removal jurisdiction as the Plaintiff has only pled state law claims ranging from conspiracy to negligent misrepresentation. Defendants nevertheless argue that this case was removable under the artful pleading doctrine, an exception to the well pleaded complaint rule applicable in cases in which a plaintiff has essentially pled a federal cause of action but files a complaint in state court, asserting only state law claims, to avoid federal jurisdiction. In this situation, a federal district court is required to look behind the face of the complaint and ascertain the real nature of the plaintiff's complaint. *See Carpenter*, 44 F.3d at 366–67. However, the artful pleading doctrine is a *narrow* exception to the well pleaded complaint rule, only applicable when a plaintiff's state law causes of action are *completely* preempted by federal law.[5] *See*

---

4. Plaintiffs do not contest that the jurisdictional amount set forth in 28 U.S.C. § 1332 is met in the case *sub judice*.

5. The Court, when determining whether federal jurisdiction exists, does not look to the notice of removal, but only to the allegations contained in the plaintiff's complaint. Moreover, a court "does not have jurisdiction over a state law claim because of a defense that raises a federal issue." *See Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). As "federal preemption is generally a defensive issue that does not authorize removal of a case to federal court," *Richardson v. United Steelworkers of America*, 864 F.2d

*Waste Control Specialists, LLC v. Envirocare of Texas, Inc.*, 199 F.3d 781, 784 (5th Cir.2000) (holding that artful pleading doctrine is a narrow exception to well pleaded complaint rule and only applicable where preemption is complete). *See also Carpenter*, 44 F.3d at 367 (observing that the United States Supreme Court has only sanctioned the artful pleading rule with regard to federal labor relations and the Employment Retirement Income Security Act of 1974). When this occurs, the case is removable even though only state law claims appear in the compliant. *See e.g. Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (holding that in cases in which ERISA applies, a case may be removed to federal court even though only state law claims appear in the compliant).

Defendants argue that Plaintiffs' allegations of conspiracy and negligent misrepresentation are artfully pled federal claims governed by the FCRA, which (1) provides that a credit reporting agency may furnish a credit report "[t]o a person which it has reason to believe intends to use the information in connection with the underwriting of insurance involving the consumer," 15 U.S.C. § 1681b(a)(3)(C), and (2) imposes mandatory disclosure requirements upon all users of credit information. *See* 15 U.S.C. § 1681m(a) (providing users of credit information must, *inter alia,* advise the consumer of the name and address of the consumer reporting agency that provided the report when the user "takes any adverse action with respect to a consumer based in whole or in part on any information contained in the consumer report"). Defendants further argue that the Plaintiffs' state law claims are preempted by subsection 1681t(b)(1)(D) [6] of the FCRA or one of the other subsections of 1681t(b)(1).[7] The Court does not agree, but need not decide whether any of the preemptive provisions contained at 15 U.S.C. § 1681t(b)(1) are applicable to the facts of this case as Defendants argue and thus available to Defendants as a defense. As previously stated, the existence of such a federal preemption defense does not authorize removal. *See Metropolitan,* 481 U.S. at 63, 107 S.Ct. 1542. The question before the Court is whether the FCRA *completely* preempts Plaintiffs' state law claims relating to the alleged credit-based coverage decisions of Defendants such that the case was removable and federal question jurisdiction exists. *See Envirocare,* 199 F.3d at 783 (holding that, "without complete preemption, the artful pleading doctrine does not apply").

---

1162, 1168 (5th Cir.1989) (citing *Metropolitan,* 481 U.S. at 58, 107 S.Ct. 1542), removal based on federal preemption is only warranted where the "preemptive force [of the federal statute] is so powerful as to displace entirely any state cause of action." *See Richardson,* 864 F.2d at 1168–69 (citing *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968)). "Such a suit is purely a creation of federal law, notwithstanding the fact that state law would provide a cause of action in the absence" of the federal statute. *Id.*

6. 15 U.S.C. § 1681t(b)(1)(D) provides:
No requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated un-

der section 1681m(d) of this title, relating to the duties of persons who use a consumer report of a consumer in connection with any … insurance transaction that is *not initiated by the consumer* and that consists of a firm offer of … insurance.
(emphasis added).

7. Defendants also argue, both in their Notice of Removal and in their Response to the Motion of Plaintiffs to Remand, that certain state laws cited by Plaintiffs in their Complaint conflict with the FCRA and are thus preempted by the FCRA. Conflict preemption is a defense to Plaintiffs claims and therefore not a proper ground for removal. *See Richardson,* 864 F.2d at 1168.

In order to completely preempt state law and permit removal to federal court, a federal statutory scheme must: (1) provide a civil enforcement provision that creates a federal cause of action replacing and protecting the same interests as the preempted state law causes of action; (2) provide a specific jurisdictional grant to the federal courts to enforce the cause of action created by the federal statute; and (3) reflect a clear Congressional intent to make the preempted state claims removable to federal court. *See Aaron v. National Union Fire Ins. Co.,* 876 F.2d 1157, 1164–65 (5th cir.1989). With regard to the first two prongs of the *Aaron* test, Congress made clear its intent with regard to creating a new cause of action under the FCRA in section 1681p of the Act.[8] The Court therefore finds that the FCRA satisfies the first two prongs of the test for complete preemption set forth by the United States Court of Appeals for the Fifth Circuit in *Aaron.* With regard to the third prong of the *Aaron* test, other courts faced with the question presently before the Court have found that the FCRA does not provide for the removal of state law claims "because the [statute] explicitly declines to replace all state law causes of action or to provide exclusive jurisdiction in the federal courts, and fails to reflect clearly an intent to make claims remova-

ble." *Swecker v. Trans Union Corporation,* 31 F.Supp.2d 536, 539 (E.D.Va.1998). *See also Watkins v. Trans Union, L.L.C.,* 118 F.Supp.2d 1217 (N.D.Ala.2000) (holding that "Congress did not intend to make state law causes of action defensively preempted by the FCRA removable to federal court"); *Sherron v. Greenwood Trust Co.,* 977 F.Supp. 804, 808 (N.D.Miss.1997) (holding that "[t]here is nothing in the legislative history or the FCRA itself to establish that Congress intended that state law causes of action[s] ... be removable").[9] As Defendants have not provided, nor has the Court uncovered in its own research, any authority to support a finding that the FCRA satisfies the third prong of the *Aaron* test, the Court finds that the FCRA does not completely preempt Plaintiffs' state law claims so as to make them removable to federal court. The Court, therefore, finds that the artful pleading doctrine has not been implicated, and that exercising removal jurisdiction pursuant to 28 U.S.C. § 1331 is not warranted.

### B. Does Diversity of Citizenship Jurisdiction Exist?

#### 1. Fraudulent Joinder Standard

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of

---

**8.** 15 U.S.C. § 1681p provides, "An action to enforce any liability created under this subchapter may be brought in an appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction...."

**9.** Defendants contend that *Sherron* was not only incorrectly decided, but also rejected by United States District Court Judge Henry T. Wingate in *Washington v. Direct General Ins. Agency, Inc.,* 130 F.Supp.2d 820 (S.D.Miss. 2000). Defendants argue that the court in *Washington* "explicitly held that state law claims preempted by the FCRA are removable." Defendants mischaracterize the holding in, and effect of, *Washington.* Judge Wingate

found that the plaintiff in *Washington* had asserted a cause of action under the FCRA, but misstated the name of the act as the "Fair Faith and Credit Act." Thus, Judge Wingate found, not that a federal claim had been artfully pled as a state law claim, but that the plaintiff "intended to assert a violation of the FCRA," but had inartfully pled his federal claim. *See Washington,* 130 F.Supp.2d at 824–25. "Claims [such as the plaintiff's in *Washington* that are] explicitly based on the FCRA are removable, but state law claims are not." *Sehl v. Safari Motor Coaches, Inc.,* 2001 WL 940846, *7, 2001 U.S. Dist. LEXIS 12638, *22 (N.D.Cal. Aug 13, 2001).

which the district courts of the United States have original jurisdiction, may be removed ... to the district court of the United States for the district and division embracing the place where such action is pending." The removing party has the burden of proving that the federal court has jurisdiction to hear the case. *See Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir.1993), *cert. denied*, 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993); *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 190 (5th Cir.1989) (holding that the "removing party bears the burden of establishing federal jurisdiction."). In cases in which the removing party alleges diversity of citizenship jurisdiction on the basis of fraudulent joinder, "it has the burden of proving the fraud." *Laughlin*, 882 F.2d at 190; *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.1990), *cert. denied* 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990). To establish fraudulent joinder, the removing party must prove: (1) that there was actual fraud in the plaintiff's pleading of the jurisdictional facts or (2) that the plaintiff has no possibility of establishing a cause of action against the non-diverse defendant in state court. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir.1999) (citations omitted); *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir.1995); *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir.1995).

▌ When considering whether a non-diverse defendant has been fraudulently joined to defeat diversity of citizenship jurisdiction, courts should "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits and deposition testimony." *See e.g. Cavallini*, 44 F.3d at 256. *See also LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th Cir.1992) (holding that "a removing party's claim of fraudulent joinder to destroy diversity is

viewed as similar to a motion for summary judgment.... A court is to pierce the pleadings to determine whether, under controlling state law, the non-removing party has a valid claim against the non-diverse parties."). Under this standard, plaintiffs "may not rest upon the mere allegations or denials of [their] pleadings." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir.2000). *See also Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n. 4 (5th Cir.2000) (finding that the "mere theoretical possibility of recovery under local law" does not preclude removal. "[T]here must at least be arguably a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder."). Further, conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that the defendant was not fraudulently joined. *See Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 392–93 (5th Cir.2000); *Peters v. Metropolitan Life Ins. Co.*, 164 F.Supp.2d 830, 834 (S.D.Miss. 2001) (J. Bramlette) (holding that the allegations against non-diverse defendants "must be factual, not conclusory, because conclusory allegations do not state a claim."). Therefore, removal is not precluded merely because the state court complaint, on its face, sets forth a state law claim against a non-diverse defendant. *See Badon*, 224 F.3d at 390. Removal is proper "if the plaintiff's pleading is pierced and it is shown that as a matter of law there is no reasonable basis for predicting that the plaintiff might establish liability on that claim against the in-state defendant." *Id.*

▌ When conducting a fraudulent joinder analysis, a court must resolve all disputed questions of fact and ambiguities of law in favor of the non-removing party, *see Dodson v. Spiliada Maritime Corp.*,

951 F.2d 40, 42 (5th Cir.1992), but *only* when there exists an actual controversy, i.e. when *both* parties have submitted *evidence* of contradictory facts." *Badon*, 224 F.3d at 394 (alteration in original). A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to support his claims against the non-diverse defendant. *Id.* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)). In the event the court, after resolving all disputed questions of fact and ambiguities of law in favor of the non-removing party, finds that there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder" and hence no basis for asserting diversity of citizenship jurisdiction. *Jernigan*, 989 F.2d at 816.

### 2. Analysis

#### a. Plaintiffs' Claims Against Defendant Howell for Negligent Misrepresentation

 As against Defendant Howell, Plaintiffs asserted causes of action for conspiracy and negligent misrepresentation based on alleged omissions of material fact by Howell. With regard to their claims of negligent misrepresentation against Howell, Plaintiffs alleged that the agents with whom they worked did not disclose the use of their credit reports in the underwriting process based on the directives of Howell to the insurance agents under his supervision to conceal from insurance customers the use of the customer's credit scores in determining insurability. Without deciding whether Plaintiffs can state claims against Howell based on alleged omissions by parties not named herein as defendants, and assuming *arguendo* that such a claim will lie, the Court notes that each of the Plaintiffs signed applications in connection with the insurance policies upon which the instant action is based, and each of the subject applications clearly provided for the use of Plaintiffs' credit reports in the underwriting process. *See* Surrebuttal, Exhibit "I," Insurance Application of Cedric Wells signed and dated by Plaintiff on August 14, 2000 (providing directly above the signature line, "As part of our underwriting procedure the Company may obtain a credit report. . . ."). *See also* Surrebuttal, Exhibit "J," Insurance Application of Jason Vircher signed and dated by Plaintiff on March 26, 1999 (providing directly above the signature line, "As part of our underwriting procedure the Company may obtain a credit report. . . .") [10]; Insurance Application of Darlisa McDonald signed and dated by Plaintiff on January 4, 2001 (providing that the signatory "authorize[s] Shelter to obtain . . . credit reports . . . or use credit scoring in evaluating and rating [her] application and policies of insurance."). It is well settled under Mississippi law that a contracting party is under a legal obligation to read a contract before signing it. *See Godfrey, Bassett & Kuyk-*

---

10. The Court also notes that, with regard to Plaintiff Vircher's claim of negligent misrepresentation: (1) the meeting at which Howell allegedly issued the directive upon which Vircher's claim of negligent misrepresentation is based took place in the year 2000, *see* Motion of Plaintiffs to Remand, Exhibit "B," (2) Plaintiff Vircher applied for and received insurance coverage for both his automobile and home in March of 1999, *see id.*, and (3) Howell did not become the supervisor of the agent with whom Vircher worked with regard to the subject insurance policies until several months after Vircher's insurance policies were underwritten. *See* Surrebutal of Defendants, Exhibit "E," Deposition of Young, pp. 49–50. Therefore, as the alleged directive of Howell postdated Vircher's applications for insurance, the alleged directive could not have affected any representations to Vircher made in connection with the insurance policies on which he sues.

*endall Architects, Ltd. v. Huntington Lumber & Supply Co., Inc.,* 584 So.2d 1254, 1257. *See also Koenig v. Calcote,* 199 Miss. 435, 25 So.2d 763 (1946); *McCubbins v. Morgan,* 199 Miss. 153, 23 So.2d 926 (1945). Moreover, knowledge of the contents of a contract will be imputed to a contract party even though she did not read the contract before signing it. *See Cherry v. Anthony, Gibbs, Sage,* 501 So.2d 416, 419 (Miss.1987). Where, as here, the terms of a contract are made available to a contracting party, any reliance on alleged misrepresentations of those terms is, as a matter of law, unreasonable. *See Carter v. Union Security Life Ins. Co.,* 148 F.Supp.2d 734 (S.D.Miss. 2001) (Lee, J.). As Plaintiffs have neither alleged nor attempted to prove that they were under any disability which would entitle them to rely on oral misrepresentations which contradict the plain written terms of the above-referenced documents, *see Martin v. Winfield,* 455 So.2d 762, 764–66 (Miss.1984), the Court finds that Plaintiffs have no right to rely on the alleged misrepresentations. Accordingly, the Court finds that there is no reasonable basis for predicting that Plaintiffs might establish liability on their claims of negligent misrepresentation against Defendant Howell in state court.

With regard to their claims of civil conspiracy, Plaintiffs alleged that Defendants Shelter and Howell conspired with one another and with Choicepoint, Inc., a credit reporting agency, to (1) "deny[ ] or cancel[ ] insurance coverage ... based directly and entirely ... on 'credit scores' associated with such individual policyholders or applicants," *see* Complaint ¶ 11, and (2) "charg[e] or assign[ ] particular insurance premium rates ... based directly and entirely on ... 'credit scores' or other credit-related data associated with such policyholders...." *See* Complaint ¶ 12. Plaintiffs further alleged that,

[i]n agreeing and combining to adopt and implement Shelter's credit-based insurance denial practice, Defendants Shelter General, Shelter Mutual, and Howell conspired to accomplish a purpose of unfair discrimination which was unlawful under Mississippi law, and further conspired to pursue the otherwise lawful object of insurance underwriting through the unlawful means of unfair discrimination, for which Defendants are liable to the Plaintiffs for the common law tort of civil conspiracy.

Complaint ¶ 23. The alleged unlawful discrimination to which Plaintiffs' refer in ¶ 23 and on which their claims of civil conspiracy are based are set forth in sections 83–2–3 and 83–5–35 of the Mississippi Code and quoted above. *See* Complaint ¶ 8 (alleging that Defendants "owed to each of their existing and potential insurance customers a duty under ... section 83–2–3 not to apply to or operate in Mississippi any insurance premium rates which are unfairly discriminatory"); Complaint ¶ 9 (alleging that Defendants "owed to each of their existing and potential insurance customers a further duty under ... section 83–5–33 not to engage in any unfair or deceptive practice or act concerning the business of insurance, including the making or permitting of any unfair discrimination between individuals of the same class and of essentially the same hazard with respect to accident insurance, by the charging of different premium amounts or rates....").

 In order to succeed on a claim of civil conspiracy, a plaintiff must show (1) the existence of a conspiracy, (2) an overt act in furtherance of that conspiracy, and (3) damages arising therefrom. *See Delta Chemical & Petroleum, Inc. v. Citizens Bank of Byhalia,* 790 So.2d 862, 877 (Miss. App.2001). Under Mississippi law, conspiracy is defined as "a combination of

persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully." *Levens v. Campbell*, 733 So.2d 753 (Miss.1999). *See also NAACP v. Claiborne Hardware Co.*, 393 So.2d 1290 (Miss.1980) (holding that "a conspiracy to be a conspiracy, must be tainted with illegality....."). Defendants argue that, because there "is no private cause of action under the statutes" on which Plaintiffs base their claims of conspiracy, Plaintiffs "cannot establish [a predicate wrong, that is,] that Howell conspired with anyone to pursue unlawful purpose, or a lawful purpose unlawfully." [11] *See* Response Memorandum of Defendants. With regard to section 83–5–33 of the Mississippi Code, the Court agrees, and has previously held, that no private cause of action exists. *See Watson v. First Commonwealth Life Ins. Co.*, 686 F.Supp. 153, 155 (S.D.Miss.1988) (holding that "[t]here is no provision for private civil actions in [MISS. CODE ANN. § 83–5–33] ... and no right of civil action has been implied") (citing *Protective Service Life Insurance Co. v. Carter*, 445 So.2d 215, 219 (Miss.1983)). However, the Mississippi Supreme Court has not expressly held that private causes of action are precluded under section 83–2–3. Therefore, and without " 'ascertaining what the state law is' with regard to whether a private cause of action exists under section 83–2–3, the Court must determine whether there is 'arguably a reasonable basis for predicting that state law

might impose liability' " under MISS. CODE ANN. § 83–2–3. *See Badon*, 236 F.3d at 286 (citing *Bobby Jones Garden Apartments v. Suleski*, 391 F.2d 172 (5th Cir. 1968)).

■ Chapter 2 of Title 83, like Chapter 5 of Title 83, is regulatory in nature and contains language similar to provisions of Chapter 5 that are interpreted to preclude a private cause of action. For example, Chapter 2 provides that "[t]he commissioner may examine any insurer, advisory organization, rate service organization, pool or residual market mechanism to ascertain compliance with this chapter." MISS. CODE ANN. § 83–2–25(1). Chapter 5 provides that "[t]he commissioner shall have power to examine and investigate into the affairs of every person engaged in the business of insurance in this state...." MISS. CODE ANN. § 83–5–37. Moreover, Chapter 2 provides that, "[i]f the commissioner finds that any person or organization has violated any provision of this chapter, the commissioner may impose a penalty...." MISS. CODE ANN. § 83–2–29(1). Based on these similarities between the provisions of Chapters 2 and 5, the Court finds that there is no reasonable basis for predicting that state law might impose liability under section 83–2–3 of the Mississippi Code. The Court therefore finds that Plaintiffs may not state a private cause of action against Defendants under MISS. CODE ANN. § 83–2–3. Accordingly, the question before the Court is

11. Defendants also argue that, based on the intra-corporate conspiracy doctrine, Plaintiffs cannot state a claim of conspiracy. The Court does not agree. Under the intra-corporate conspiracy doctrine, "the acts of the agent are the acts of the corporation." *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911 (5th Cir.1952). Because a "corporation cannot conspire with itself any more than a private individual can," and because a conspiracy requires that there be at least two conspirators, no cause of action for conspira-

cy will generally lie as between a corporation and its agent. *See id.* In the case *sub judice*, Plaintiffs alleged that the Insurance Defendants and Howell conspired with Choicepoint, Inc. *See* Complaint ¶¶ 11 and 12. Thus, while Shelter and Howell may not conspire with one another under the intra-corporate conspiracy doctrine, the doctrine is inapplicable in the case *sub judice* based on the existence of Choicepoint, Inc., an alleged co-conspirator outside the corporate structure of Shelter.

whether, under Mississippi law, a claim of civil conspiracy based on alleged statutory violations will lie where the claimant has no cause of action under the statutes allegedly violated.

■ Plaintiffs, without addressing whether a private right of action exists under either section 83–5–33 or 83–2–3, argue that the alleged conspiracy is separately actionable, apart from "the actionability of the substantive violations involved." *See* Rebuttal Memorandum of Plaintiffs. That is, Plaintiffs argue that a civil conspiracy claim can stand alone, without reference to an underlying tort. The Court finds no support for such a contention under Mississippi or any other law, however. Authority to the contrary is, in fact, legion. *See e.g. In re: Orthopedic Bone Screw Products Liability Litigation,* 193 F.3d 781, 789–90 (3d Cir.1999) (a multi-district litigation case in which the United States Court of Appeals for the Third Circuit surveyed the law in 60 of the 94 United States federal districts and found that the law "uniformly requires that conspiracy claims be predicated upon an underlying tort that would be independently actionable against a single defendant"). *See also K & S Partnership v. Continental Bank, N.A.,* 952 F.2d 971, 980 (8th cir.1991) (holding that "a claim of civil conspiracy does not set forth an independent cause of action but rather is sustainable only after an underlying tort claim has been established") (applying Missouri law); *Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1218 (11th Cir.1999) (holding that " 'actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor' ") (applying Florida law and quoting *Williams Elec. Co. v. Honeywell, Inc.,* 772 F.Supp. 1225, 1239 (N.D.Fla.1991)); *O'Neal v. Home Town Bank of Villa Rica,* 237 Ga.App. 325, 514 S.E.2d 669, 675 (1999) (holding that "[a]bsent the underlying tort, there can be no liability for civil conspiracy"); *Admiral Ins. Co. v. Columbia Casualty Ins. Co.,* 194 Mich.App. 300, 486 N.W.2d 351, 359 (1992) (holding that, "[b]ecause [plaintiff] has failed to state any tortious action, its conspiracy action must also fail"); *Pelagatti v. Cohen,* 370 Pa.Super. 422, 536 A.2d 1337, 1342 (1987) (holding that, "[a]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy"); *Stoldt v. City of Toronto,* 234 Kan. 957, 678 P.2d 153, 161 (1984) (holding that "[c]onspiracy is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy"); *Alexander & Alexander of N.Y., Inc. v. Fritzen,* 68 N.Y.2d 968, 510 N.Y.S.2d 546, 503 N.E.2d 102, 102–03 (1968) (holding that "a mere conspiracy to commit a tort is never of itself a cause of action. Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort"). The Court finds that, while the Mississippi Supreme Court has not considered the actionability of a civil conspiracy claim under circumstances such as those present in the case *sub judice,* no reasonable basis exists for predicting that state law might impose liability on their claims of civil conspiracy against Defendant Howell in state court.

### III. Conclusion

■ Having found that no reasonable basis exists for predicting that state law might impose liability on any of Plaintiffs claims against Defendant Howell, the Court finds that the non-diverse Defendant was fraudulently joined as a defendant in this action. Defendant Howell's citizenship will not be considered for the purpose of diversity of citizenship jurisdiction analysis under 28 U.S.C. § 1332. Therefore, as the statutory requisites for

diversity of citizenship jurisdiction are satisfied, the Court finds that it has federal subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

IT IS THEREFORE ORDERED that the Motion of Plaintiff to Remand [7–1] is hereby denied.

IT IS FURTHER ORDERED that Defendant Kerry Howell is hereby dismissed from this action with prejudice.

IT IS FURTHER ORDERED that the Motion of Defendant Howell to Dismiss [13–2] is hereby denied as moot.