# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 27, 2023

No. 21-60733

Lyle W. Cayce
Clerk

Robin Mayfield; Owen Mayfield; William Mayfield;
Estate of Mark Stevens Mayfield,

*Plaintiffs—Appellants*,

*versus*

Butler Snow, L.L.P.; Donald Clark, Jr.; City of
Madison, Mississippi; Mary Hawkins-Butler, *individually
and in her Official Capacity*; Police Chief Gene Waldrop,
*Individually and in his Official Capacity*; Chuck Harrison, *Individually
and in his Official Capacity*; Vickie Currie, *Individually and in her
Official Capacity*; John and Jane Does 1-10; Richard
Wilbourn, III,

*Defendants—Appellees*,

Dale Danks, Jr.; Janet Danks; Jordan Russell; Quinton
Dickerson,

*Movants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:17-CV-514

_____

Before Richman, *Chief Judge*, and Ho and Engelhardt, *Circuit
Judges*.

No. 21-60733

Per Curiam:[*]

Mark Mayfield was arrested for being part of a scheme to take a picture of Senator Thad Cochran's late wife, Rose Cochran, in the privacy of her nursing room home.  One month later, Mayfield was found dead in his home, seemingly from suicide.[1] His widow, sons, and estate filed a complaint alleging 42 U.S.C. § 1983 claims as well as various tort claims against state and private actors involved in his arrest and prosecution.  The complaint alleges that Mayfield was subject to a politically motivated prosecution that deprived him of his constitutional rights, shut down his law practice, and humiliated him and his family, causing severe emotional distress—all of which directly led to his suicide.

Defendants filed a motion to dismiss all claims.  Excluding one—a *Lozman* claim against the City of Madison and Mayor Hawkins-Butler—the district court dismissed all of Plaintiffs' claims.[2]  After discovery, the district court granted summary judgment for the City of Madison and Mayor Hawkins-Butler, finding that Plaintiffs could not prove the required elements of their *Lozman* claim.  Plaintiffs appeal the dismissal of their claims, the summary judgment on their *Lozman* claim, and several orders regarding expert testimony and discovery.  We affirm.

---

[*] Judge Ho concurs in the judgment only, in light of *Mayfield v. Currie*, 976 F.3d 482 (5th Cir. 2020), and *Gonzalez v. Trevino*, 42 F.4th 487 (5th Cir. 2022).  *See also Gonzalez v. Trevino*, 60 F.4th 906, 907 (5th Cir. 2023) (Ho, J., dissenting from denial of rehearing en banc) (disagreeing with *Mayfield* and *Gonzalez*).

[1] The death was ruled a suicide, but "Plaintiffs find it difficult to concede a suicide" even though they assume it for the purposes of this appeal.

[2] *See Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945 (2018).

No. 21-60733

## I.

This is the second time this case has come before us on appeal. *See Mayfield v. Currie*, 976 F.3d 482 (5th Cir. 2020). The facts of this case were well stated by our court's previous opinion, and we summarize them here.

In 2014, Tea Party candidate Chris McDaniel challenged Senator Thad Cochran in the tightly contested Mississippi Senate Republican Primary. McDaniel supporters believed that Senator Cochran was having an extramarital affair with his assistant, Kay Webber, and sought to make it a campaign issue. At the time, Senator Cochran's wife, Rose Cochran, was suffering from progressive dementia and was bedridden in a Mississippi nursing home.

John Mary along with other McDaniel supporters hatched a plan to sneak into Rose Cochran's nursing home room to take a photo of her. The goal was to juxtapose a photo of her with the younger Kay Webber, to support allegations of Senator Cochran's infidelity.

These individuals reached out to a fellow McDaniel supporter, Mark Mayfield. Mayfield frequently visited the nursing home because his mother was also a resident there.

Mayfield refused to take the photo of Rose Cochran himself. But he explained where her room was to the other McDaniel supporters because he believed guests routinely visited the residents.

Relying on Mayfield's directions, Clayton Kelly snuck into the nursing home and took a photo of Rose Cochran in her room. Kelly incorporated the photo into a public YouTube video. Kelly removed the video a few hours later due to negative reactions, including from other McDaniel supporters.

Senator Cochran's team saw the YouTube video and contacted Butler Snow, the law firm that served as counsel to Senator Cochran's campaign and his family. A lawyer at Butler Snow, Don Clark, brought the video to the attention of the Mayor of Madison and the Madison Chief of Police.

No. 21-60733

Officers Chuck Harrison and Vickie Currie were assigned to the case. They prepared and submitted warrant applications for the search and arrest of Clayton Kelly for violating a subsection of Mississippi's Abuse, Neglect, and Exploitation statute that makes the willful infliction of physical pain or injury on a vulnerable person a felony. *See* Miss. Code Ann. § 43-47-19(3). There's no evidence Kelly physically injured Rose Cochran, but the citation to that specific subsection may have been a typographical error—subsection (2)(b) criminalizes the willful exploitation of a vulnerable person when the exploitation has monetary value. Kelly gave officers permission to search his Facebook and YouTube accounts, which implicated other McDaniel supporters involved in the scheme. Further investigation revealed Facebook messages that implicated Mayfield's participation. Based on these messages, Harrison and Currie submitted search and arrest warrant affidavits for Mayfield, each of which cited either Miss. Code Ann. § 43-47-19(3) or Miss. Code Ann. § 97-29-63, a statute prohibiting the posting of messages through electronic media for the purpose of causing injury to any person with lewd intent. *See Gilmer v. State*, 955 So.2d 829, 840 (Miss. 2007) (holding that lewd intent is a necessary element of an offense under Miss. Code Ann. § 97-29-63). A magistrate judge issued the warrants on May 22, 2014. Mayfield was arrested at his office the same day.

Mayfield was subject to significant news coverage and lost his largest client. He was also forced to stop his political activities for the Tea Party and the McDaniel campaign. On June 24, 2014, Senator Cochran won his runoff race.

Three days later, Mayfield committed suicide.

A year later, the Madison County Circuit Court entered a judgment of conviction against Clayton Kelly for conspiring to commit burglary of a

4

dwelling.  Additionally, John Mary entered a guilty plea of conspiracy to violate MISS. CODE ANN. § 97-45-17.

After Mayfield's death, his widow, sons, and estate filed their complaint against Defendants.  Their claims included a § 1983 claim, a *Bivens* claim, and various state tort claims against private parties, the local municipality, and government and law enforcement officials involved in Mayfield's arrest.[3]  All were dismissed except a *Lozman* claim against the City of Madison and Mayor Hawkins-Butler.

## II.

## A.

This court reviews de novo a district court's dismissal for failure to state a claim under Rule 12(b)(6).  *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021).

Plaintiffs claim that Butler Snow and Don Clark, by initiating a police report, participated in a retaliatory prosecution against Mayfield for the exercise of his First Amendment rights.  All parties agree that this claim turns on whether Butler Snow and Clark had probable cause to initiate a police report.  The district court found that probable cause was evident from the amended complaint.  The amended complaint states that a photo of Rose Cochran was taken without permission, which could suggest trespass or breaking and entering.  The district court did not err in dismissing the claims against Butler Snow and Don Clark.

---

[3] *See Bivens v. Six Unknown Named Agents Fed. Narcotics Agents*, 403 U.S. 388 (1971).

Plaintiffs additionally brought § 1983 claims against Officer Vickie Currie and Officer Chuck Harrison.[4]  Officer Currie got a warrant for Mayfield's arrest, and Officer Harrison got a warrant to search his home and workplace.

As this court has previously noted, Plaintiffs brought claims under multiple provisions of the Constitution, including but not limited to the First and Fourth Amendments.  *See Mayfield*, 976 F.3d at 486 n.1.  But this court concluded that "Plaintiff-Appellees' claims against Officer Currie . . . fall under the Fourth Amendment."  *Id.*  As that opinion explained, "in order to bring a First Amendment claim for retaliatory arrest, a plaintiff generally must first show the absence of probable cause for the arrest, *i.e.*, a Fourth Amendment violation."  *Id.* (citing *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019)).

So Plaintiffs need to allege that Mayfield was arrested and searched without probable cause.  "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."  *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) (emphasis and quotation marks omitted).  In this case, Plaintiffs claim they can defeat probable cause and overcome qualified immunity by showing a harm under either *Malley v. Briggs*, 475 U.S. 335 (1986), or *Franks v. Delaware*, 438 U.S. 154 (1978).

Under *Malley*, "an officer can be held liable for a search authorized by a warrant when the affidavit presented to the magistrate was 'so lacking in indicia of probable cause as to render official belief in its existence

---

[4] The district court dismissed the 42 U.S.C. § 1983 claim against Police Chief Gene Waldrop because the amended complaint did not specify any claim against him.  Plaintiffs do not contest this dismissal in their appellate briefing.

unreasonable.'" *Mayfield*, 976 F.3d at 487–88 (quoting *Malley*, 475 U.S. at 344-45). This court's previous decision in this case held that there is no *Malley* harm here because there were other affidavits that supported the arrest warrant. 976 F.3d at 487–88. But that decision remanded to the district court to address the *Franks* claim.

Under *Franks*, an officer who "deliberately or recklessly provide[s] false, material information for use in an affidavit" in support of a warrant or who "who makes knowing and intentional omissions that result in a warrant being issued without probable cause" is liable. *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017). On remand, the district court found there was no *Franks* harm, a finding we now affirm.

Plaintiffs argue there was a *Franks* violation because the Officers withheld evidence that Mayfield didn't have the requisite intent to trespass or invade Rose Cochran's privacy. While its arguable that Mayfield did not meet the intent element of the specific statute cited, that's not enough to overcome qualified immunity. The allegations establishing the conspirators wanted a "good, clear picture" admit an intent to enter into Rose Cochran's room and take her picture. And, as the district court noted, Plaintiffs "have not produced a single similar case where a court denied qualified immunity based on a difference of opinion about criminal intent." *Mayfield v. Butler Snow, LLP*, 2021 WL 3642038, at *2 (S.D. Miss. Aug. 17, 2021). The district court did not err in dismissing the claims under § 1983.

Finally, Plaintiffs brought numerous state tort actions against Officer Currie and Harrison, which were all dismissed by the district court. On appeal, Plaintiffs only challenge the district court's dismissal of their civil conspiracy claim. The district court was correct in dismissing Plaintiffs' claim for civil conspiracy because it was not timely. Moreover, civil conspiracy is a derivative claim that depends on some underlying wrong. *See*

No. 21-60733

*Wells v. Shelter Gen. Ins. Co.,* 217 F.Supp.2d 744, 755 (S.D. Miss. 2002) (applying Mississippi law; collecting cases). To the extent that Plaintiffs do not appeal the dismissal of the state law tort claims, their civil conspiracy claim cannot proceed. To the extent that Plaintiff's civil conspiracy claim relies on their federal § 1983 claim, their civil conspiracy claim cannot proceed because the § 1983 claim was correctly dismissed.

The district court did not err in dismissing Plaintiffs' claims against the Defendants in this case.

**B.**

A district court's ruling on a summary judgment motion is reviewed de novo. *Correa v. Fischer*, 982 F.2d 931, 932 (5th Cir. 1993). Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Plaintiffs' only claim to survive the motion to dismiss stage was their *Lozman* claim against the City of Madison and Mayor Hawkins-Butler. After discovery, the district court granted summary judgment for the City of Madison and its Mayor. Plaintiffs' theory was that the City of Madison pursued Mayfield in retaliation for his political activities at the direction of the Mayor.

The Supreme Court held in *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945 (2018), that a First Amendment retaliatory arrest claim against a municipality may survive despite the presence of probable cause under certain circumstances. In such cases, there's a difficult evidentiary burden that Plaintiffs do not meet. In *Lozman*, there was extensive evidence the city council used city resources to intimidate the plaintiff because of his speech, including a meeting transcript enshrining that plan as official municipal

8

policy and a video of a city council member directing the plaintiff's arrest. *Id.* at 1949–50. Not so here.

Here, Plaintiffs' best evidence merely establishes that the City of Madison was aggressively pursuing those who committed a potential invasion of the privacy of an incapacitated adult. The evidence doesn't show that the City carried out the investigation, arrest, search, or prosecution *because of* Mayfield's political views, which the Plaintiffs needed to show to succeed. The same is true of the Mayor: Although some evidence in the record suggests she knew the conspirators were McDaniel supporters, other evidence clarifies that she was not responsible for the prosecutorial decisions of the District Attorney's Office. The district court properly granted summary judgment for the City of Madison and its Mayor.

## C.

Plaintiffs also appeal the district court's ruling regarding an expert witness as well as various discovery orders issued by a magistrate judge.

Regarding the expert witness, the district court barred Plaintiffs from bringing Michael Lyman to give expert testimony on the absence of probable clause. Lyman's testimony is an inadmissible legal opinion. The district court did not err in striking Plaintiffs' expert witness.

Plaintiffs also appeal the magistrate judge's discovery orders. Plaintiffs must show that the court abused its discretion in denying a discovery motion. *Atkinson v. Denton Pub. Co.*, 84 F. 3d 144, 147 (5th Cir. 1996). However, this court need not conduct that analysis. Plaintiffs challenge discovery orders made by a magistrate judge. At no point did the district court judge ever consider the discovery issues raised by the Plaintiffs. "The law is settled that appellate courts are without jurisdiction to hear appeals directly from federal magistrates." *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980). *See* FED. R. CIV. P. 72(a).

No. 21-60733

\* \* \*

We affirm.